## FISHER et al. v. BROWN.[1]

### (Circuit Court of Appeals, Sixth Circuit. October 8, 1895.)

### No. 307.

CONVERSION—MEASURE OF DAMAGES.

　　Plaintiff made a contract with one J. to sell him, for cash, the timber on certain pine lands. J., without paying the cash, used the timber to fulfill a contract with defendants to sell them lumber, to be made from the timber, at agreed prices, parts of which were to be advanced to him by defendants when the logs were skidded, and at other stages of their manufacture into timber; J. agreeing that the title to the logs should pass to defendants, and warranting the title. Defendants were ignorant of plaintiff's rights. *Held,* that the proper measure of damages for defendants' conversion of the logs, they being innocent purchasers, and having advanced the money expended in improving the value of the logs on the faith of a good title thereto, was the value of the logs at the time when they were skidded, and when the first advance was made by defendants. Wooden-Ware Co. v. U. S., 1 Sup. Ct. 398, 106 U. S. 432, distinguished.

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

This was an action by Fayette Brown, trustee, against Spencer O. Fisher, Alfred Mosher, Wilson H. Tousey, and Joseph Turner for the conversion of certain timber. Plaintiff recovered judgment in the circuit court. Defendants bring error. Reversed.

Henry Russell and Ashley Pond, for plaintiffs in error.

W. W. Wicker, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge. The action below was for damages for conversion of 2,000,000 feet of lumber. Fayette Brown, trustee, the plaintiff, recovered a verdict against Fisher and others, defendants, for $22,000. Many errors are assigned, but we find it necessary only to consider the assignment based on the charge of the court as to the measure of damages.

The facts necessary to state the question are as follows: Brown made a contract with one Johnson to sell him the pine timber on a half section of land in northern Michigan, held by Brown, as trustee, for $6,125 cash. Johnson did not pay the cash, but, expecting to do so, went on, and cut the timber, without Brown's permission, and used it in the fulfillment of a lumber contract he had made with Fisher and others, defendants. By his contract with the defendants, Johnson agreed to sell and deliver on the rail of vessels at Marquette 4,000,000 feet of lumber, to be cut from certain pine saw logs, for which defendants were to pay at certain rates per 1,000 feet, varying from $8 to $36, according to grade, in 60 days from the delivery of each half million feet at Marquette. Defendants further stipulated to advance to Johnson $3 per M on each half million of said logs when skidded, $3 per M on each half million banked near the water, $2 per M on each half million delivered in the mill boom at Marquette, and $3 per M as each half million was cut and piled on the wharf

[1] Rehearing pending.

at Marquette; interest at 7 per cent. per annum to be allowed until advances were paid by delivery of lumber over vessel rail under contract. It was further provided that, to secure the advances, the title to all the logs, whether good or culls, should pass to the defendants. By an instrument of even date Johnson sold and transferred to the defendants, all and singular, the pine timber on certain named sections of land, warranting the title. This was the timber from which the lumber was to be cut and delivered in fulfillment of the contract. Subsequently it proved that the sections named in the contract would not produce the required 4,000,000 feet, and, by verbal agreement between Johnson and defendants, he included the logs from Brown's half section in the terms of the contract, and used them to perform his obligations thereunder, cutting them into lumber, and delivering them over the rail at Marquette. Defendants made the same advances on these logs as upon all the others.

The learned judge presiding at the circuit in effect charged the jury that, even if defendants were innocent purchasers from Johnson for value of the lumber cut from Brown's logs (and he saw no reason to doubt that they were), they were nevertheless liable to Brown for the value of his timber, as it was delivered to them over the rail at Marquette, in the form of cut lumber; that then was the time when they converted it to their own use, and that the value at that time was, therefore, the measure of plaintiff's recovery. Defendants duly excepted to this instruction, and requested the court to charge that plaintiff could only recover the value of the logs from which the lumber was cut on the skid ways, but the court refused to do so.

In the leading case of Wooden-Ware Co. v. U. S., 106 U. S. 432, 1 Sup. Ct. 398, the rules for measuring the damages of one whose timber has been cut and carried away were stated as follows:

"(1) Where the defendant is a willful trespasser, the full value of the property at the time and place of demand or of suit brought, with no deduction for his labor and expense. (2) Where he is an unintentional or mistaken trespasser, or an innocent vendee from such trespasser, the value at the time of conversion, less the amount which he and his vendor have added to its value. (3) Where he is a purchaser, without notice of wrong, from a willful trespasser, the value at the time of such purchase."

Such cases may be viewed in two ways. He who is injured is entitled to compensation. This is the pecuniary difference between his condition with the injury done, and his condition if he had been uninjured. The difference between his condition with his trees cut and his trees uncut would seem to be the value of his timber in the trees. On the other hand, the trees cut would still be his property, recoverable in specie, and they would not cease to be his property, even when cut into lumber, and rendered more valuable. The difference in his condition then, with the lumber recovered and in his possession, and his condition with the lumber placed beyond his recovery, in specie, through the act of another, would be the value of the lumber thus cut. The foregoing rules for reconciling these two views of the proper measure of damages are based on the equitable doctrine that a willful trespasser should not be reimbursed for any outlay he has knowingly made on another's property with the

intent to appropriate it to his own use, while a man who innocently appropriates another's property, and expends labor and money on it to increase its value, should be allowed compensation for this increased value. What is true of the original trespasser is true of his vendee, who stands in his shoes, and is liable in the same amount as his vendor. If the vendee is an innocent purchaser, he can be held only for the value of the property as it came into his hands, and not for the increased value he may have given it.

The question here is how these rules are to be applied to a case where an innocent purchaser from the willful trespasser, in anticipation of an absolute purchase, and on the faith of a good title to the property in his vendor, advances money to be expended in improving its value, and to be credited on account of the purchase money, when the property is delivered in its improved condition, and takes from the vendor a transfer of title to the property in its unimproved condition, pending the completion of the contract, to secure the advances thus made. Under such circumstances, we think the measure of damages should be fixed as of the time when the first advances were made by the innocent purchaser, to be expended in adding to the value of the property. The rule which forfeits to the owner the added value conferred by the labor and money of the trespasser is a punitive one, and should not be made to apply to the innocent purchaser where it can be avoided. In the Wooden-Ware Co. Case, it could not be avoided, because when the purchaser paid his money to his vendor, that which he bought belonged, increased value and all, to the person from whom it had been tortiously taken. In this case, however, the defendants advanced money for the very purpose of giving the property added value, when it was still in the shape of logs, and secured a transfer of title at the time. We think justice requires that we should treat the case as if the purchase had taken place when the logs were on the skids, and the accession in value had been the result of the defendants' expenditure thereafter. In this view of the case, the jury should have been instructed to measure the damages by the value of the logs tortiously taken on the skids, and not that of the cut lumber on the rail at Marquette.

A question was made on the hearing in this court for the first time whether the plaintiff, Brown, under the deed to him as trustee, had any title to the land from which the timber in controversy was cut. It was contended that the deed created a mere naked trust in the grantee, and, by the statute of Michigan, vested the legal title, not in the trustee, but in the beneficiaries. The deed to Brown is not set forth in full in the record, and to support the judgment we might be obliged to presume that its contents, not disclosed, were of such a character as to create an active trust. In any event, as the case must be tried again, when the deed may be introduced in evidence in full, we do not now pass on the question.

The judgment of the circuit court must be reversed, with directions to order a new trial.