POWERS v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. January 6, 1903.)

No. 1,072.

1. PUBLIC LANDS—UNLAWFUL CUTTING OF TIMBER—ACTION BY UNITED STATES.

The United States may maintain an action to recover the value of timber cut from unsurveyed mineral lands to which its title has not been devested, notwithstanding the locating of mining claims thereon by third parties.

2. TRIAL TO COURT—SPECIAL FINDINGS OF FACT.

In an action at law in a circuit court, where a jury is waived by stipulation, pursuant to Rev. St. § 649 [U. S. Comp. St. 1901, p. 525], and special findings are made by the court, such findings must state the ultimate

facts, presenting questions of law only, and, where only probative facts are found, leaving ultimate facts necessary to support the judgment to be inferred, the judgment must be reversed, and a new trial ordered.

**8.** PUBLIC LANDS—UNLAWFUL CUTTING OF TIMBER—MEASURE OF DAMAGES.

One who cut and removed timber from public mineral lands, which he converted into lumber and sold for the purposes permitted by Act June 3, 1878 [U. S. Comp. St. 1901, p. 1528], is not liable, as a willful trespasser, for the added value of the timber due to his labor and expense, merely because of his failure to keep the record required by the rules prescribed by the general land office pursuant to such act, if he believed in good faith that he was a resident of the state in such sense as to be within the terms of the act, and where his failure to keep the record was due to his ignorance that it was required.

In Error to the Circuit Court of the United States for the Southern Division of the Western District of Michigan.

This is an action in trover, brought by the United States to recover the value of certain logs and lumber converted by the plaintiff in error from pine timber standing on mineral lands in South Dakota belonging to the United States, on which locations had been made by other parties. The first count in the declaration alleges the conversion of 668,000 feet of pine lumber, and the second count the conversion of the same number of feet of pine logs. The defendant pleaded the general issue. The parties stipulated to waive a trial by jury, and that the cause should be heard and determined by the judge. It was also stipulated that the title to the lands from which the timber was cut was then in the United States, and that they were unsurveyed mineral lands. Pursuant to a request of counsel for the defendant, the court made special findings of the facts and law, which were filed before the entry of the final judgment, to many of which findings the defendant excepted. Upon the findings so made and filed, judgment against the defendant was entered for $7,241 as damages, and for costs, whereupon the defendant brought the case here on writ of error.

Kingsley & Wicks (Kingsley & Kleinhans, of counsel), for plaintiff in error.

George G. Covell, U. S. Dist. Atty., and Walter I. Lillie, Asst. U. S. Dist. Atty.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge, having made the foregoing statement of the proceedings in the case, delivered the judgment of the court.

1. The plaintiff in error raises the question whether, the lands on which the timber stood, having been already located, and thereby segregated from the public domain, the United States can maintain this action. But as the location had not been ripened by purchase and payment, and the title of the United States had not yet been devested, we have no doubt the plaintiff was entitled to bring the suit.

2. The principal question in the controversy, aside from the question of damages, arises upon the defense made under the act of congress of June 3, 1878 [U. S. Comp. St. 1901, p. 1528], granting the privilege to certain persons and for certain purposes to cut standing timber in that locality. The act reads as follows:

"All citizens of the United States and other persons, bona fide residents of the state of Colorado or Nevada or either of the territories of New Mexico, Arizona, Utah, Wyoming, Dakota, Idaho or Montana, and all other mineral districts of the United States, shall be and are hereby authorized and permitted to fell and remove for building, agricultural, mining or other domestic

purposes, any timber or other trees, growing or being on the public lands, said lands being mineral and not subject to entry under existing laws of the United States, except for mineral entry, in either of said states, territories or districts of which such citizens or persons may be at the time bona fide residents, subject to such rules and regulations as the secretary of interior may prescribe for the protection of the timber and of the undergrowth growing upon said lands, and other purposes: provided, the provisions of this act shall not extend to railroad corporations.

"Sec. 2. That it shall be the duty of the register and the receiver in the local office in whose district any mineral land may be situated, to ascertain from time to time, whether any timber is being cut or used upon any such lands, except for the purposes authorized by this act, within their respective land districts, and if so, they shall immediately notify the commissioner of the general land office of that fact, and all necessary expenses incurred in making such proper examinations shall be paid and allowed said register and receiver, in making up their next quarterly account.

"Sec. 3. Any person or persons who shall violate the provisions of this act, or any rules and regulations in pursuance thereof, made by the secretary of the interior, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in any sum not exceeding five hundred dollars, and to which may be added imprisonment for any term not exceeding six months."

Under the authority of this act, the commissioner of the land office prescribed certain rules, the fourth and sixth of which were as follows:

"(4) Every owner or manager of a sawmill, or other person, felling or removing timber under the provisions of this act, shall keep a record of all timber so cut or removed, stating time when cut, names of parties cutting the same or in charge of the work, and describing the land from whence cut by legal sub-divisions if surveyed, and as near as practicable if not surveyed, with a statement of the evidence upon which it is claimed that the land is mineral in character, and stating also the kind and quantity of lumber manufactured therefrom, together with the names of parties to whom any such timber or lumber is sold, dates of sale, and the purpose for which sold, and shall not sell or dispose of such timber, or lumber made from such timber, without taking from the purchaser a written agreement that the same shall not be used except for building, agricultural, mining or other domestic purposes within the state or territory; and every such purchaser shall further be required to file with said owner or manager a certificate, under oath, that he purchases such timber or lumber exclusively for his own use and for the purposes aforesaid."

"(6) Timber felled or removed shall be strictly limited to building, agricultural, mining and other domestic purposes, within the state or territory where it grew."

The defendant contended in the court below that he was a person authorized by the act to cut the timber in question, and evidence was given bearing upon the question of his residence at the time when the timber was cut and manufactured into lumber. The defendant claimed that he was a resident of South Dakota within the meaning of the act. No doubt this was a question involved in the issue. Certain evidential facts bearing upon it are stated in the findings of the court, as follows:

"That the defendant, at the time the logs were cut and the lumber manufactured and disposed of, was a citizen of the United States, living at Grand Rapids, Michigan, where he has resided for the last 54 years, during which time that place, and no other, was his voting domicile, and his principal interests and business were during all of that time, and still are, in the city of Grand Rapids, Mich. In 1879 he went to Spearfish, then a small hamlet in the Black Hills, about 15 miles from Deadwood, where he developed a

small water power for making sashes, doors, and blinds. He also put up a stucco mill for grinding plaster rock found in the hills, and built there three or four substantial dwelling houses, and invested about $20,000 in the developing of his business at that place. Connected with his business at Spearfish was a small sawmill of six or eight thousand feet daily capacity, known as the 'Iron Creek Mill,' in the mountains, about 11 miles from Spearfish, in the mineral district, and the trees were cut from these located mineral lands at a distance of from one-half to three-quarters of a mile from the Iron Creek Mill, where the logs were sawed into lumber. This Iron Creek Mill was built in 1891, and the timber was cut and the logs sawed into lumber during the three summers next following. For 17 years following his first visit at Spearfish he spent three, four, or five months there during every summer attending to his business interests. During all of these 17 years he had resident agents looking after and attending to his interests, which included a lumber yard at Spearfish. He had two married daughters and one son living there, with whom he lived while he was there."

But this falls short of a finding of the ultimate fact as to whether he had a residence in South Dakota. Perhaps, upon balancing the facts, the conclusion might be drawn that he had no residence there. If so, it was for the trial court to state it. If the question were one of domicile, it might be admitted that the facts recited were cogent evidence that the defendant's domicile was all the while in Michigan. But a man may have a domicile in one place and a residence in another for business, health, pleasure, or for other purposes; that is to say, he may have the residence on which his domicile is maintained, and another residence for business or other purposes at another place. The statement that the defendant resided for 54 years at Grand Rapids is to be taken in connection with the other statement that he was carrying on business in South Dakota for 17 years, and spent 3, 4, or 5 months of each of those years at his place of business there, attending to it, and "lived" with members of his family resident there. A residence may be temporary with the animo revertendi to his place of domicile. One of the definitions given in the dictionaries of the word "live" is "to dwell, to reside, to abide." We do not make these propositions with a view to decide any question of fact in the present case, but only to show that the facts found do not necessarily establish the fact that the defendant was not a resident of South Dakota.

By section 649, Rev. St. [U. S. Comp. St. 1901, p. 525], it is provided that, when trial by jury is waived, and the issues of fact are determined by the court, "the finding of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury." But the finding must be either one or the other, general or special, and its effect is to be determined upon its character in that regard. As was said by the supreme court in Norris v. Jackson, 9 Wall. 125, 19 L. Ed. 608:

"A special finding is not a mere report of the evidence, but a statement of the ultimate facts on which the law of the case must determine the rights of the parties; a finding of the propositions of fact which the evidence establishes, and not the evidence on which those ultimate facts are supposed to rest. * * * Whether the finding be general or special, it shall have the same effect as the verdict of a jury; that is to say, it is conclusive as to the facts so found. * * * In the case of a special verdict [finding] the question is presented as it would be if tried by a jury, whether the facts thus found require a judgment for plaintiff or defendant."

And in Raimond v. Terrebonne Parish, 132 U. S. 192, 194, 10 Sup. Ct. 57, 33 L. Ed. 309, Mr. Justice Gray, in delivering the opinion of the court, said:

"By the settled construction of the acts of congress defining the appellate jurisdiction of this court, either a statement of facts by the parties, or a finding of facts by the circuit court, is strictly analogous to a special verdict, and must state the ultimate facts of the case, presenting questions of law only, and not to be a recital of evidence or of circumstances which may tend to prove the ultimate facts, or from which they may be inferred."

And in The E. A. Packer, 140 U. S. 360, 365, 11 Sup. Ct. 794, 35 L. Ed. 453, Mr. Justice Brown, referring to sections 649 and 700, [U. S. Comp. St. 1901, pp. 525, 570] observed:

"The findings of the court under these sections are treated as a special verdict, and are gauged by the rules applicable to them (Norris v. Jackson, 9 Wall. 125, 19 L. Ed. 608; Insurance Co. v. Copelin, 9 Wall. 461, 467, 19 L. Ed. 739; Wayne Co. v. Kennicott, 103 U. S. 554, 26 L. Ed. 486); and, as was said in Graham v. Bayne, 18 How. 60, 63, 15 L. Ed. 265, if a special verdict be ambiguous or imperfect,—if it find but the evidence of facts, and not the facts themselves, or finds but part of the facts in issue, and is silent as to others,—it is a mistrial, and the court of error must order a venire de novo."

Hence it follows that when, as here, the finding is special, the facts found should be sufficient to support the judgment, and this means the essential facts, and not those probative facts from which the essential facts may be inferred. It appears from the record that counsel for the defendant submitted a request for a finding as follows:

"As a matter of law, I find that the defendant, at the time the logs were cut and the lumber manufactured and disposed of, was a bona fide resident of South Dakota, within the meaning of the act of June 3, 1878, and, further, that, if the defendant is found liable at all for the 517,000 feet of lumber, he should only be charged with the stumpage of the logs in the tree or the value of the logs at the Iron Creek Mill."

This was refused. Counsel for the United States urge that the refusal amounts to a finding that the defendant was not a bona fide resident of South Dakota. But this is not so, for the finding requested included the determination of the measure of damages in the way proposed if the defendant should be held liable, and this determination would have been inconsistent with the finding of the court upon that subject, as the sequel shows. For aught we can know, the refusal may have rested upon this latter ground. But probably the right construction of the findings of the court is that it intended to pretermit the finding of the ultimate fact of residence; for, having found that, although the defendant kept a set of commercial books at his lumber yard, yet that those books were not kept with any intention of complying with the rules and regulations of the secretary of the interior (meaning, as we suppose, the commissioner of the land office), and the books did not in any sense comply with such rules and regulations, proceeded to determine as matter of law "that the cutting and removing of the timber by the defendant * * * without complying with the rules and regulations as the secretary of the interior had prescribed, * * * made the defendant a trespasser from the beginning, and as such liable for all

the timber which he cut from those lands, and that he is liable for the value at the time he parted with the property, with no deduction for the outlay of labor and money he put upon it," which included the cutting and drawing the timber to his sawmill at Iron Creek, its manufacture into lumber there, and its removal thence to his lumber yard at Spearfish. In respect to the failure of the defendant to comply with the above-mentioned rules and regulations, the court found it "was due to his ignorance of such rules and regulations." Upon the subject of values the court found that the timber, when standing upon the lands, was of no value; that when brought to the mill at Iron Creek, where some of it was sold, it was worth $3 per 1,000; that when sawed, in which condition some was sold, it was worth there $8 per 1,000; and that after it had been removed to Spearfish, where the principal part of it was sold, it was worth $13 per 1,000.

From what has been stated, it would appear that the fault of the defendant, on which he was adjudged liable, consisted in his failure to comply with the rules and regulations prescribed by the land department, in that he did not keep the records and statements required thereby, and which failure was due to his ignorance of such rules and regulations. In such circumstances we think it admits of question whether it would be proper to charge the defendant with the whole value of the lumber after it had been cut, manufactured, and brought to a place where it was marketable, and when in fact the whole value of the property with which the defendant is charged consisted of the labor and money he had expended upon it. The measure of damages in such cases depends upon the question whether the defendant contributed value to the article converted with knowledge that he had no right to thus deal with it. And we are quite unable to perceive how the situation is aggravated by attributing to the act of conversion the quality of a trespass ab initio which presupposes that the cutting was not in itself unlawful, but became so by reason of the failure to make the proper record. The law looks to the state of mind with which the act itself was done to see if it was of a character to so infect the improvement as that the actor ought to be deprived of all benefit from his outlay.

The rule laid down in the case of Bolles Wooden Ware Co. v. U. S., 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230, and which has ever since been followed in the federal courts, was this: When the defendant is a willful trespasser, the plaintiff is entitled to recover the full value of the property at the time and place of demand or of suit brought, with no deduction for his labor and expense. But when the defendant is an unintentional or mistaken trespasser, or an innocent vendee from such trespasser, the value at the time of conversion, less the amount which he or he and his vendor have added to its value, constitutes the measure of damages. Later cases, where this rule has been followed and applied, are: Benson Mining & Smelting Co. v. Alta Mining & Smelting Co., 145 U. S. 428, 12 Sup. Ct. 877, 36 L. Ed. 762; U. S. v. Mock, 149 U. S. 273, 13 Sup. Ct. 848, 37 L. Ed. 732; Fisher v. Brown, 37 U. S. App. 407, 17 C. C. A. 225, 70 Fed.

570; Gentry v. U. S., 41 C. C. A. 185, 101 Fed. 51; U. S. v. Van Winkle, 51 C. C. A. 533, 113 Fed. 903. In Fisher v. Brown, supra, a case decided by this court, Judge Taft, delivering the opinion, said: "The rule which forfeits to the owner the added value conferred by the labor and money of the trespasser is a punitive one, and should not be made to apply to the innocent purchaser when it can be avoided,"—a proposition which, in principle, and as the authorities show, has equal application to one who, although a trespasser, is not a willful one. No 'doubt it 'is open to say that the defendant was negligent in not informing himself of the rules and regulations of the commissioner. Still, if the fact was that he was ignorant of them, and there was no actual bad faith, his trespass would not subject him to the severer rule.

These considerations bear also upon another subject, to which we now recur. The facts recited in the findings show that the defendant may have supposed that he had such residence as authorized him to cut the timber. But here, also, we are confronted with a similar situation to that existing in the record relating to the question already considered, namely, that, although the facts are stated in the finding from which an inference might be drawn with respect to the conclusion as to whether the plaintiff in error in good faith believed himself to be a resident of South Dakota, and within the authority of the act in cutting the timber, no conclusion is in fact made in the finding. This question has an important bearing upon the measure of damages, for, although the defendant was a trespasser, the rule applied by the court below was only applicable to a case of willful trespass.

The judgment must be reversed, and a new trial ordered.