McQUILLAN et al. v. TANANA ELECTRIC CO.

(Third Division. Fairbanks. October 6, 1906.)

1. TRESPASS (§ 40*)—PLEADING—TREBLE DAMAGES.

In an action for cutting or carrying away timber from the land of another, to entitle the plaintiff to recover treble damages, judgment therefor must be demanded in the complaint.

[Ed. Note.—For other cases, see Trespass, Cent. Dig. §§ 87, 88; Dec. Dig. § 40.*]

2. MINES AND MINERALS (§ 51*)—PUBLIC LANDS—TRESPASS—DAMAGES.

Plaintiff was the locator and owner of a valid placer mining claim. Defendant trespassed upon the claim, and cut and carried away timber therefrom; plaintiff sued for treble damages, under section 322 Code Civ. Proc. Alaska. Upon demurrer, held, that a qualified locator and owner of a valid placer mining claim may recover treble damages, under section 322, from a wanton trespasser who willfully cuts and removes timber from the mining claim.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 137–141; Dec. Dig. § 51.*]

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

3. MINES AND MINERALS (§ 51*)—DAMAGES—TRESPASS.

A valid location of a placer mine confers upon the locator and owner the right to recover treble damages from a wanton and willful trespasser for cutting and removing timber therefrom.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 51.*]

Demurrer to complaint. Plaintiffs allege that on and prior to November 1, 1905, they were, and ever since have been, and now are the owners and in the lawful occupation and possession of the certain placer mining claim described in their complaint, containing 160 acres, and allege that said claim was duly marked and staked upon the ground, and notice of location thereof duly recorded, and discovery of gold thereon duly made.

For cause of action against defendant, plaintiffs allege: That between the 1st day of November, 1905, and the 5th day of February, 1906, the defendant forcibly and with notice of plaintiffs' rights entered upon said placer mining ground, the property of the plaintiffs, and willfully, maliciously, knowingly, and unlawfully cut down and cut into cordwood standing and growing trees thereon, and carried away and converted the same to his own use, the same being in quantity 600 cords, and in addition thereto cut down and carried away trees and timber in quantity sufficient to make 150 cords of wood, of the value to the plaintiffs and of the value of $4 per cord, amounting in the whole to the sum of $3,000, whereby said plaintiff lost said trees and timber, and the said land and placer mining claim and ground belonging to the plaintiffs was and is greatly damaged thereby and lessened in value to the amount of $3,000, the damage aforesaid, and thereby the defendant, by the force of sections 322 and 323, part 4, c. 33, Carter's Ann. Code Alaska, on page 215, of said Laws, forfeited and became liable and is liable to pay the

plaintiff treble the amount of said damages. That the defendant has not paid the same nor any part thereof. That prior to the defendant having committed the acts above complained of, and at the time he entered upon the commission of said acts, and at various other days and times thereafter during the continuance of the commission of said acts by said defendant, the plaintiffs duly notified the defendant of their rights to said placer mining ground and to said timber growing thereon, and demanded of defendant to depart therefrom, and to quit cutting and removing the trees and timber therefrom, and that upon said demand the defendant refused so to do. Demand for judgment in treble damages.

Miller, West & De Journel, for plaintiffs.

McGinn & Sullivan, for defendant.

WICKERSHAM, District Judge. Sections 322 and 323 of the Code of Civil Procedure of Alaska were adopted by Congress from Oregon, and are identical with sections 338 and 339 of the Code of Civil Procedure of that state, and are as follows:

"Sec. 322. Whenever any person shall cut down, girdle, or otherwise injure, or carry off any tree, timber, or shrub on the land of another person, or on the street or highway in front of any person's house, village, town, or city lot, or cultivated grounds, or on the commons or public grounds of any village, town, or city, or on the street or highway in front thereof, without lawful authority, in an action by such person, village, town, or city against the person committing such trespasses, or any of them, if judgment be given for the plaintiff it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be.

"Sec. 323. If upon the trial of such action it shall appear that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his own, or that of the person in whose service or by whose direction the act was done, or that such tree or timber was taken from uninclosed woodland for the purpose of repairing any

public highway or bridge upon the land or adjoining it, judgment shall only be given for single damages."

31 Stat. p. 386.

Under these sections in the Oregon Code it has been held in an early and important case that:

"In an action for cutting or carrying away timber from the land of another to entitle the plaintiff to recover treble damages, judgment therefor must be demanded in the complaint, so that the defendant may be apprised of the claim, and the facts stated in the complaint must bring the case within the statute. Civ. Code Or. § 335 (338)."

And the court said of the answer to such a complaint:

"Where an action is brought for cutting timber on the land of another without authority, the defense against a claim for treble damages must be pleaded, and it may be either: (1) That the trespass was casual or involuntary; (2) or that, at the time of the commission thereof, the defendant had probable cause to believe the premises were his own, or those of the person under whom he acted; (3) or that the timber was taken from uninclosed woodland for the purpose of repairing a highway or bridge. Civ. Code Or. § 336 (339)." Neff v. Pennoyer, 3 Sawy. 495, Fed. Cas. No. 10,085.

As a matter of form the complaint in this case is sufficient to comply with the essential requirements of the statute, and gives the defendant such notice of the claim against it as to enable it to answer thereto. The argument on the demurrer, however, reaches much further than the form of the pleading, and denies the right of the plaintiffs to any relief upon their own statement of the case. This argument is based upon the admitted fact that plaintiffs have no patent from the government, and proceeds upon the theory that until such patent is obtained the government is the owner of the timber growing on plaintiffs' mining claim; that plaintiffs themselves have no right to cut the timber except so fast as is necessary in the development and working of

3 A.R.—8

their mine, and hence have no such an ownership or right as will support their recovery for its loss.

The act of Congress entitled "An act extending the homestead laws and providing for right of way for railroads in the district of Alaska, and for other purposes," was approved May 14, 1898 (30 Stat. 409 [U. S. Comp. St. 1901, p. 1533]), and its eleventh section deals with timber cutting in Alaska, and reads as follows:

"Sec. 11. That the Secretary of the Interior, under such rules and regulations as he may prescribe, may cause to be appraised the timber or any part thereof upon public lands in the district of Alaska, and may from time to time sell so much thereof as he may deem proper, for not less than the appraised value thereof, in such quantities to each purchaser as he shall prescribe, to be used in the district of Alaska, and not for export therefrom. And such sales shall at all times be limited to actual necessity for consumption in the district from year to year; and payment for such timber shall be made to the receiver of public moneys of the local land office of the land district in which said timber may be sold, under such rules and regulations as the Secretary of the Interior may prescribe, and the moneys arising therefrom shall be accounted for by the receiver of such land office to the Commissioner of the General Land Office in a separate account and shall be covered into the treasury. The Secretary of the Interior may permit, under regulations to be prescribed by him, the use of timber found upon the public lands in said district of Alaska by actual settlers, residents, individual miners, and prospectors for minerals, for firewood, fencing, building, mining prospecting, and for domestic purposes as may actually be needed by such person for such purposes."

Under the power conferred and the duty imposed upon him by the act the Secretary of the Interior, on January 13, 1904, issued a circular letter of instructions and therein prescribed the regulations under which timber on public lands in Alaska could be cut. These regulations provide for a petition from those who desire to cut timber to be presented to the Department of the Interior describing the lands and timber, providing for an appraisal of the timber, for notice

and bids for its purchase, and an award of the contract to cut the same from the department, and concluding with this general regulation:

"Actual settlers, residents, individual miners, and prospectors for minerals may procure, free of charge, from unoccupied unreserved public lands in Alaska, for firewood, fencing, building, mining, prospecting, and for domestic purposes, so much timber as may be actually needed by such persons, for individual use, to an extent not exceeding, in stumpage valuation, $100, in any one year. It is not necessary to secure permission from the department to take timber from public lands as allowed in this paragraph. The exercise of such privilege is, however, subject at all time to supervision by the department, with a view to restriction or prohibition if deemed necessary. The uses specified in this paragraph constitute the only purposes for which timber may be taken, free of charge, from public lands in Alaska."

After thus specifically providing for the disposal of timber through appraisal and sale, and the free use to a limited extent, the regulations also declare that:

"Section 2461, United States Revised Statutes, is in force in the district of Alaska, and its provisions may be enforced against any person or persons who cut or remove, or cause or procure to be cut or removed, or aid or assist or are employed in cutting or removing, any timber from public lands therein, except as allowed by law." U. S. Comp. St. 1901, p. 1527.

Section 2461 provides a penalty for cutting timber without lawful authority of triple the value thereof and imprisonment not to exceed 12 months.

Admitting the facts stated in the complaint to be true, as the demurrer does, it follows, from this view of the statute and the regulations thereunder, that the defendant was a trespasser when it cut the timber from the mining claim in question. If, as defendant's counsel so ably argues, the land embraced within the claim was, so far as its timber is concerned, still public land of the United States, the act of the de-

fendant was a criminal trespass punishable by a fine of triple the value and imprisonment; if it was the property of the plaintiffs, then, under section 322 of the Code of Civil Procedure the plaintiff may have judgment for treble the value thereof.

This brings us to a fair consideration of the character of the title which a qualified locator has in timber standing upon a valid placer mining location in his possession. Mining claims on public lands are property in the fullest sense of the word, which may be sold, transferred, mortgaged, and inherited, without infringing the title of the United States. Forbes v. Gracey, 94 U. S. 762, 24 L. Ed. 313. A mining claim perfected under the law is property in the highest sense of that term, which may be bought, sold and conveyed, and will pass by descent. Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735. The character of the title claimed by the plaintiffs in this case is thus described by the Supreme Court of the United States in a later case:

"They were the discoverers of the claim. They marked its boundaries by stakes, so that they could be readily traced. They posted the required notice, which was duly recorded in compliance with the regulations of the district. They had thus done all that was necessary under the law for the acquisition of an exclusive right to the possession and enjoyment of the ground. The claim was thenceforth their property. They needed only a patent of the United States to render their title perfect, and that they could obtain at any time upon proof of what they had done in locating the claim, and of subsequent expenditures to a specified amount in developing it. Until the patent issued the government held the title in trust for the locators or their vendees." Noyes v. Mantle, 127 U. S. 348, 8 Sup. Ct. 1132, 32 L. Ed. 168.

Congress has declared that in Alaska "real property" includes all lands, tenements, and hereditaments, and rights thereto, and all interests therein, whether in fee simple or for the life of another. The term "personal property" includes

all goods and chattels, moneys, credits, and effects of whatever nature not included in the term "real property." Section 181, Civ. Code. A mining claim is "real property." Lavignino v. Uhlig, 26 Utah, 1, 71 Pac. 1046, 1051, 99 Am. St. Rep. 808; Hopkins v. Noyes, 4 Mont. 550, 2 Pac. 280. And so are growing trees. Balkcom v. Empire Lum. Co., 91 Ga. 651, 17 S. E. 1020, 44 Am. St. Rep. 58; Pierrepont v. Barnard, 5 Barb. (N. Y.) 364; Vorebeck v. Roe, 50 Barb. (N. Y.) 302. It follows from these authorities, as well as from reason and common sense, that a valid placer mining claim is property in the fullest sense of the word, real property, and so is the standing timber thereon. The mining claim of the plaintiffs was real property, "their property," and so were the growing trees thereon. McFeters v. Pierson, 15 Colo. 201, 24 Pac. 1076, 22 Am. St. Rep. 388.

The courts have generally compared the title of one who enters a homestead upon the public domain with the title of a mining locator, and in many respects they are similar, and there is a long line of decisions holding that the homesteader and the miner have no such title to the growing timber on their claims that they are permitted to cut and dispose of it in advance of the development of the homestead or mine. On homesteads the plow must follow the ax; on mining claims, the pick. The Supreme Court of the United States has declared in homestead cases that:

"Where a citizen of the United States has made an entry upon the public lands of the United States under and in accordance with the homestead laws of the United States, which entry is in all respects regular, he may cut such timber as is necessary to clear the land for cultivation, or to build him a house, outbuildings, and fences, and perhaps may exchange such timber for lumber to be devoted to the same purposes; but he cannot sell the timber for money, except so far as it may have been cut for the purpose of cultivation, and in case he exceeds his rights in this respect, he may be held liable in a criminal prosecution under section 2461, or section 5388 of the Revised Statutes of the United States [U. S. Comp. St. 1901, pp. 1527,

3649], or either of said sections, for cutting and removing, after such homestead entry and while the same is in full force, the standing trees and timber found and being on the land so entered as a homestead." Shiver v. United States, 159 U. S. 491, 16 Sup. Ct. 54, 40 L. Ed. 231; Stone v. United States, 167 U. S. 178, 17 Sup. Ct. 778, 42 L. Ed. 127.

In mining cases the same general rule prevails:

"Possession of a mining claim, in accordance with the provisions of the statute, by well-settled authority, confers the right, subject to certain limitations and conditions, upon a locator, to work the claim for precious metals for all time, if he desires to do so, but confers no right to take timber, or otherwise make use of the surface of the claim, except so far as it may be reasonably necessary in the legitimate operation of mining. * * * It did not divest the legal title of the United States, or impair its right to protect the land and its product, by either civil or criminal proceedings, from trespass or waste." Teller v. United States, 113 Fed. 273, 51 C. C. A. 230; Same, 117 Fed. 577, 54 C. C. A. 349; Powers v. United States, 119 Fed. 562, 56 C. C. A. 128.

These authorities are offered by the defendant to show that neither a homesteader nor a mineral claimant may sell timber in advance of the proper proportional development of his entry, and the United States may prevent such waste by civil and criminal action; that, as the United States may recover from the mineral claimant for waste by cutting and selling timber from his claim, it follows that plaintiffs in this case may not also recover damages. But does it follow that, because the United States may sue this defendant and recover treble damages, the plaintiffs may not also recover their treble damages given by section 322 of the Code of Civil Procedure? Has a miner no right to protect the timber standing on his valid mining claim, except to induce the United States, if he can, to sue for damages or prosecute the trespassers criminally? Has he no remedy for the admitted injury done to his estate by the wanton act of the defendant?

In the case of United States v. Anderson, 194 U. S. 394, 24

Sup. Ct. 716, 48 L. Ed. 1035, the court laid down the rule that where one has done all that is necessary for him to do to acquire a title to government land, and thereafter iron and stone is removed by trespassers, the damage therefore is done to the claimant under the government, and not to the United States; that by relation the claimant's title begins with its valid inception and damages thereafter are his. Applying that rule to this case, the valid inception of a placer mining claim confers upon the locator the right to recover damages for cutting and removing timber therefrom after the initiation of his rights.

It must not be overlooked that section 322 of the Alaska Code of Civil Procedure is as much an act of Congress as are those provisions by which the United States maintains civil and criminal suits against trespassers upon its lands, and that it is the latest expression of Congress on that subject. Congress has invited the prospector to go upon the public domain and develop the mineral wealth of the nation. He is given a property interest in his claim, and Congress has declared that his estate in the mine and in the timber thereon in Alaska is "real property." And in section 322 Congress has also declared that "whenever any person shall cut down * * * or carry off any tree * * * on the lands of another person * * * without lawful authority" the person so injured may recover treble damages for the injury. I do not find any exception in the act; it seems to embrace the miner's claim, and the homestead entry.

In the case now before the court the lawful possession of the plaintiffs is admitted by the demurrer, and in such a case is sufficient proof of title to enable them to maintain the action, though back of their qualified title stands the paramount title in their trustee, the United States. What right that trustee may have against the plaintiffs in case they recover an unwarranted sum is not for the defendant to consider. As to

the plaintiffs' peaceable and lawful possession defendant was a wanton trespasser, and must respond in such damages as it has caused them.

In this case the plaintiffs were the owners of the real property upon which the timber stood, they were the owners of the timber while standing, and when it was severed from their soil by the defendant, though its character was thereby changed from realty to personalty, their title was not changed or destroyed.   Northern Pacific R. R. v. Lewis, 162 U. S. 366, 374, 16 Sup. Ct. 831, 40 L. Ed. 1002.   Plaintiffs were the owners and in possession of a valuable mining claim; the court knows as common knowledge that the timber thereon was a valuable and necessary aid to the proper and economical working of the claim; plaintiffs were injured by the wanton and unlawful trespass of the defendant in just the value of the timber taken. Their claim was, as to the defendant, "the land of another person," and under section 322 of the Code of Civil Procedure they are given the right to maintain an action for punitive damages in treble the value of the timber cut and removed. It is my judgment that a qualified locator who has in good faith located a valid placer mine and is in possession thereof in strict compliance with the mining laws ought to have, and in section 322 of the Code of Civil Procedure of Alaska has, a means of protecting the timber growing on his claim and of recovering damages from a wanton trespasser who cuts and removes it.   McDonald v. Montana Wood Co., 14 Mont. 88, 35 Pac. 668, 43 Am. St. Rep. 616; McFeters v. Pierson, 15 Colo. 201, 24 Pac. 1076, 22 Am. St. Rep. 388; Rogers v. Soggs, 22 Cal. 444; 14 Morrison, Min. Rep. 375; Campbell v. Rankin, 99 U. S. 261, 25 L. Ed. 435.

The demurrer is overruled.