DUFFY et al. v. STRANDBERG.

(Fourth Division. Fairbanks. September 10, 1915.)

No. 221–I.

1. PUBLIC LANDS ⟐⟐11—TRESPASS—MINES AND MINERALS.
    The plaintiffs were the owners of a placer mining claim upon which stood a large number of growing trees. The defendant cut and carried them, away for cordwood and mining timbers. *Held*, guilty of trespass, and liable in damages for the amount of the injury done.

2. PUBLIC LANDS ⟐⟐13—MINES AND MINERALS—DAMAGES—TRESPASS.
    The owner of a placer mining claim may maintain a suit for damages against one who trespasses thereon and cuts standing timber, though patent had not issued from the United States.

3. EQUITY ⟐⟐39(1)—INJUNCTION—DAMAGES—TRESPASS.
    The plaintiffs brought a suit for injunctive relief and for damages, a suit to enjoin a trespass and for an accounting.

⟐⟐See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
    5 A.R.—23

*Held*, a court of equity, having acquired jurisdiction for one purpose, will retain it for the administration of full relief.

4. MINES AND MINERALS ⊙⟶17(1)—DISCOVERY.
     Where mineral has been found, and the evidence is of such a character that a person of ordinary prudence, not necessarily an expert miner, would be justified in the further expenditure of his labor and money, with a reasonable prospect of success, in developing a paying mine, the requirements of the statute have been met.

5. PUBLIC LANDS ⊙⟶13—DAMAGES—TRESPASS ON MINING CLAIMS.
     There is only one safe rule by which the damage to a mining claim, as such, by reason of a timber trespass, can be ascertained, and that is by showing the value of the claim before the trespass, compared with its value after the trespass. It was incumbent upon the plaintiffs to show reasonably accurate computation of the actual damages sustained by them as owners of the placer mining claim. This they have not done. The defendant will be restrained from further trespass, and nominal damages will be allowed plaintiffs in the sum of one dollar.

This suit was brought to restrain trespass upon the Broken Snowshoe Association placer mining claim and to recover damages for injuries to the same by the defendant.

On statement of counsel, under the provisions of section 924 of the Compiled Laws of Alaska, the name of Emma Duffy was added as a party plaintiff, and paragraph II of the complaint was amended to allege that W. F. Duffy is the owner of an undivided five-eighths interest, and Emma Duffy is the owner of an undivided one-eighth interest, in and to said placer mining claim.

Plaintiffs allege citizenship and residence in Otter recording precinct, territory of Alaska, and that at all the times hereinafter mentioned the plaintiff W. F. Duffy has been, and now is, the owner and in possession of an undivided five-eighths interest, subject only to the paramount interest of the United States, in the Broken Snowshoe Association placer mining claim, consisting of 160 acres, situate on Cleary creek, a tributary of Bonanza creek, in said precinct and territory; that the plaintiff Emma Duffy is the owner of an undivided one-eighth interest in and to said claim; that at all the times hereinafter mentioned, up to the 19th day of December, 1914, C. A. Duffy and E. R. Maginnis were the owners and in possession of an undivided one-eighth each in the said placer min-

ing claim; that on the said 19th day of December, 1914, the said C. A. Duffy and E. R. Maginnis, for a good and valuable consideration, by instrument in writing duly made and executed, transferred their respective interests in the said mining claim, and as well all claims and demands and rights of action against the above-named defendant, to the above-named plaintiff J. E. Beattie, and the said Beattie ever since has been and now is the owner and in possession of an undivided one-fourth interest in the said mining claim.

That upon the ground within the boundary lines of the said Broken Snowshoe Association placer mining claim there was up to the 1st day of June, 1914, a large quantity of standing timber, the property of the above-named plaintiffs, for mining purposes, which said timber was, and is, actually necessary, for the proper and minerlike working of the said mining claim.

That between the 1st day of June, 1914, and the 24th day of December, 1914, the said defendant, David Strandberg, with his agents, servants, and employés, with full knowledge of the plaintiffs' rights in and to the said Broken Snowshoe placer mining claim, and without the consent of the plaintiffs or the predecessors in title of the plaintiff Beattie, did forcibly enter upon said mining claim, and did wantonly and maliciously cut down a large number of the growing trees upon said claim, and cut the same into cordwood and mining timbers, and during the months of November and December, 1914, up to and including said 24th day of December, 1914, the defendant, with his agents, servants, and employés, with full knowledge as aforesaid of the rights of the plaintiffs in the said mining claim, and without their consent, or the consent of either of them, did take, haul, and carry away from the said mining claim, to Flat creek, in the said precinct, one hundred and thirty-three (133) cords of said cordwood and mining timbers, and did convert the same to his own use and benefit, which said acts of the defendant greatly damaged the said mining claim as a workable mine.

That as soon as the plaintiff Duffy learned of the acts of the defendant, and his agents, servants, and employés, and while the said cutting and hauling was being carried on, to wit, early in the month of December, 1914, he notified the said defendant personally that he was trespassing on the property of the plaintiffs, and warned him against said trespass, and since said first notification the plaintiffs have posted notices on

the said claim and on the said wood still on the said claim warning all persons to not cut or haul away any of the timber on the said claim, and the plaintiffs have, at various times since, and while the said cutting and hauling was being carried on, personally warned the said defendant and his employés, to not cut or haul away any of the said timber or cordwood.

That the measure of damages suffered by these plaintiffs by and through the acts of the defendant, his agents, servants, and employés, in committing the acts complained of, is the reasonable value of the said wood at the point of its conversion by the defendant, and that seventeen ($17.00) dollars per cord is a reasonable value.

That by reason of the said acts of the defendant as above set forth, the said one hundred and thirty-three (133) cords of wood and mining timbers have been lost to these plaintiffs, and the said placer mining claim belonging to these plaintiffs was greatly damaged and lessened in value to the amount of twenty-two hundred and sixty-one dollars ($2,261.00), the value of said wood as aforesaid.

Wherefore plaintiffs pray judgment against the defendants as follows:

(a) For the sum of twenty-two hundred and sixty-one dollars;

(b) For an order of this court restraining the defendant, his agents, servants, and employés, from further trespassing on the mining claim of the plaintiffs;

(c) For their costs and disbursements herein;

(d) For such other and further relief as to the court may seem meet.

The answer specifically denied each and every material allegation of the complaint, except the citizenship of the plaintiffs, and for a further defense alleges in substance that the plaintiffs and their predecessors in interest did not make a valid discovery of gold within the boundaries of the alleged Broken Snowshoe Association placer mining claim; that the area embraced therein is chiefly valuable for the timber thereon; and that said location was not in good faith, but was for the sole purpose of securing the timber thereon, and not for placer mining purposes. The plaintiffs by reply deny the allegations of the affirmative defense.

Upon the issues presented, counsel consenting thereto, trial was had by the court.

Fred Harrison, of Fortune Ledge, for plaintiffs.
David Strandberg, in pro. per.

BUNNELL, District Judge.  The plaintiffs herein seek relief by restraining order, and also pray that damages be assessed for the injury already done.  Though somewhat unusual, an action in this form is by no means unknown.  In the case of Bishop v. Baisley, reported in 28 Or. 119, 41 Pac. 936, the court is asked to restrain a continuing trespass on a mining claim by the removal of valuable ore and for damages already done by such trespass.  In this case the title to the property was in dispute, but in commenting on the nature of the action the court said:

"This may be termed a suit to enjoin a trespass, and for an account.  It falls within the category of remedies which are of purely equitable cognizance.  The trespass, threatened or actual, is the element which, in proper cases, lays the foundation for equitable interference.  It is the primary 'cause of suit.'  The power to assess damages is incidental, and does not exist as an equitable remedy, except in connection with the injunction to restrain the trespass, and is sustained upon the principle that, as a general rule, a court of equity, having acquired jurisdiction for one purpose, will retain it for all, and proceed to the adjudication of legal as well as equitable rights, with a view to the administration of full relief."

"This simple pecuniary recovery is, in the vast majority of causes, legal, and not equitable, but is not unknown in equity."  Pomeroy's Equity Jurisprudence, vol. 1, p. 121, citing State v. Sunapee Dam Co., 72 N. H. 114, 55 Atl. 899.

"It is a settled principle of equity that, where jurisdiction is taken for one purpose, it will be retained in order to afford full relief."  Pomeroy's Equitable Remedies, vol. 2, § 568.

In passing, it is also well to note that the plaintiffs do not seek relief under section 1154 of the Compiled Laws of Alaska, which provides:

"Whenever any person shall cut down, girdle, or otherwise injure, or carry off any tree, timber, or shrub on the land of another person, or on the street or highway in front of any person's house, village, town or city lot, or cultivated grounds, or on the commons or public grounds of any village, town, or city, or on the street or highway in front thereof, without lawful authority, in an action by such person, village, town, or city against the person committing such trespasses, or any of them, if judgment be given for the plaintiff it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be."

In McQuillan v. Tanana Electric Co., 3 Alaska, 110, the court held that a qualified locator and owner of a valid placer mining claim may recover treble damages under section 1154 from a wanton trespasser who willfully cuts and removes timber from a mining claim. It is a general rule that, in an action to recover treble damages under a statute, the demand for such damages must be expressly inserted in the declaration, and reference should be made to the act. Chipman v. Emeric, 5 Cal. 239; Palmer v. York Bank, 18 Me. 166, 36 Am. Dec. 710; Hughes v. Stevens, 36 Pa. 320; Broschart v. Tuttle, 59 Conn. 1, 21 Atl. 925, 11 L. R. A. 33.

The evidence shows that on the 1st day of January, 1912, the Broken Snowshoe Association placer mining claim was staked by Chas. Courtright and seven associates as locators, and that thereafter on the 4th of March, 1912, a copy of said location notice was filed with the recorder for Otter precinct, that thereafter the annual assessment work was done as required by statute, that affidavit of annual assessment work for the year 1914 was duly filed with the recorder for Otter precinct as required by statute, and that the plaintiffs by divers conveyances are now the owners of said placer mining claim as alleged in the complaint. The defendant denies the discovery of gold within the boundaries of said claim. This is the important point in this case, for if no valid discovery was made on said premises prior to the 1st day of June, 1914, by the plaintiffs or their predecessors in interest, the defendant must prevail.

Charles Courtright, sworn on behalf of the plaintiffs, testified that he staked the claim on the 1st day of January, 1912, by placing the initial and four other stakes in place, which stakes he testified were as required by law, and that at or about the same time he blazed out some of the lines; that later, in the month of May, he and the plaintiff Duffy were on the claim and blazed out the rest of the lines, and also put up some guide flags.

The plaintiff W. F. Duffy, sworn on behalf of the plaintiffs, testified: That he helped to blaze and flag the lines of the claim in the month of May, 1912, and that in the month of October, 1912, he, with the assistance of the said Courtright, took a camping and prospecting outfit over to the claim, and proceeded to prospect the claim. A few days later his father, C. A. Duffy, an owner at that time of an undivided one-eighth

interest in the said claim, arrived on the ground. That the two together cut out the boundary lines of the said claim. That while on the claim in the months of October and November, 1912, the plaintiff Duffy put down a prospect hole about fifteen feet deep, and then drove a cut four or five feet wide and about twenty feet long. That during said work he found gold in several pans. The most he found in any one pan must have been several hundred fine colors; the biggest being about the size of the head of a pin. That later, in the spring of 1913, some time about the month of March, he sank some more holes and then let a lease to Jerry Ford and others. That Ford and associates put down four or five holes and then quit work on the lease.

W. F. Duffy's evidence with regard to making a discovery of gold on the Broken Snowshoe Association claim was corroborated by J. E. Beattie to the effect that he had seen gold in the holes put down by himself and Duffy in the winter of 1914, and also by the evidence of R. S. Hart to the effect that he and one Kilroy both panned gold on the claim in 1913. Duffy's evidence was further corroborated by Jerry Ford, a witness for the defendant, who testified that out of four pans taken by him from holes put down under his lay from Duffy he found gold in two of them, and he was very positive in his statement that one of the pieces of gold found by him was a "good-sized piece."

Several witnesses called on behalf of the defendant testified that they had examined recently the open cut and holes put down by the plaintiffs, and did not find gold, but did find black sand.

The proof that the boundaries of the Broken Snowshoe claim had been properly marked is ample. The question of what is a valid discovery is again presented for consideration.

Where mineral has been found, and the evidence is of such a character that a person of ordinary prudence, not necessarily an expert miner, would be justified in the further expenditure of his labor and money, with a reasonable prospect of success, in developing a paying mine, the requirements of the statute have been met.

The evidence is that Cleary creek is in a placer mining belt; that several creeks in this section have produced gold in paying quantities. A "paying mine," or one producing gold in paying quantities, is to be construed with reference to whether

it will pay the cost of operation; profits being in the nature of excess. By new methods of operation, claims once abandoned have become paying mines. It is safe to say that the vast majority of placer mining claims in this territory do not show gold in paying quantities in every shaft or in every open cut. The "pay streak"·is difficult to locate, and such may not exist; but it is more liable to be discovered by the claimant prospecting his claims, and doing the annual assessment work thereon with confidence in the value of the claim by virtue of the discovery testified to have been made, than by the defendant who seeks to cut the timber thereon and denies the existence of mineral therein.

According to the evidence, in the opinion of the court such discoveries of gold have been made as are sufficient to justify the court in holding that prior to the 1st of June, 1914, a valid discovery of gold had been made within the boundaries of the Broken Snowshoe Association placer mining claim.

The evidence on the question of the alleged trespass is very conclusive. There is some doubt as to the amount of wood cut and hauled away. The defendant's only excuse for the trespass is that he considered the land more valuable for timber than for mining, and that plaintiffs were not holding the claim in good faith as a placer mining claim. The defendant was not permitted to show that the land was more valuable for timber than for mineral. It is a well-established rule that the determination of the character of the land prior to final entry and issuance of patent is entirely for the Land Department. Central Pac. R. R. Co. v. Valentine, 11 Land Dec. 238; Cowell v. Lammers (C. C.) 21 Fed. 200; Heath v. Wallace, 138 U. S. 573, 11 Sup. Ct. 380, 34 L. Ed. 1063; Steel v. St. Louis, 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226; Barden v. N. P. R. R., 154 U. S. 288, 14 Sup. Ct. 1038, 38 L. Ed. 992.

No evidence was offered sufficient to warrant the court in saying that the plaintiffs were acting with fraudulent intention.

Trespass having been established, an accounting for the damages sustained, if any, must be had.

"A mining claim perfected under the law is property in the highest sense of that term, which may be bought, sold and conveyed, and will pass by descent." Forbes v. Gracey, 94 U. S. 762, 24 L. Ed. 313; Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735.

"Possession of a mining claim, in accordance with the provisions of the statute, by well-settled authority, confers the right, subject to

certain limitations and conditions, upon a locator, to work the claim for precious metals for all time, if he desires to do so; but confers no right to take timber, or otherwise make use of the surface of the claim, except so far as it may be reasonably necessary in the legitimate operation of mining." Teller v. U. S., 113 Fed. 280, 51 C. C. A. 230.

The plaintiffs in this case do not attempt to avail themselves of the provisions of section 1154 of the Compiled Laws of Alaska. They allege that they are entitled to recover as damages the value of 133 cords of wood at the point of conversion, and that $17 per cord is the value thereof. Evidence was introduced to show the cost of cutting the wood ready for hauling and hauling the same to the point of conversion. Many cases have been called to the attention of the court in support of the above contention.

The timber on the Broken Snowshoe Association claim is available for use by the plaintiffs for certain specific purposes, prior to patent. They have a right to keep and preserve it standing upon their mining claim until such time as they require it in carrying on mining operations on said claim. They have no right to cut and sell the timber. It appears to the court that there is only one safe rule by which the damage to a mining claim, as such, by reason of a timber trespass, can be ascertained, and that is by showing the value of the claim before the trespass, compared with its value after the trespass. No stumpage value has been shown except the price of twenty-five cents per cord charged by the government. This cannot be considered as a measure of the damage. It is simply the price per cord collected by the government for certain timber sales. The damage to the claimants may be less, or many times more. It was incumbent upon the plaintiffs to show reasonably accurate computation of the actual damages sustained by them as owners of the placer mining claim. This they have not done.

The defendant will be restrained from further trespass, in accordance with the prayer of the complaint, and nominal damages will be allowed plaintiffs in the sum of one dollar.

In accordance with the views herein expressed, findings of fact and conclusions of law, judgment, and decree, may be prepared and submitted.