JESSIE E. JENKINS, administratrix, *vs.* NORTH SHORE DYE HOUSE, INC.

Norfolk.   December 8, 1933. — February 26, 1935.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Motor Vehicle*, Registration: nonresident. *Statute*, Construction. *Words*, "Resident," "Nonresident."

The word "resident" in G. L. c. 90, § 1, as amended by Sts. 1923, c. 464, § 1; 1924, c. 189, should be given a broad and general meaning and not a restricted or narrow one.

A finding, that the owner of an automobile registered in Rhode Island was on September 12, 1927, a "resident" of that State within the meaning of G. L. c. 90, § 1, as amended by Sts. 1923, c. 464, § 1; 1924, c. 189, was warranted by evidence that on January 1 he was a resident of a city in that State, where he lived in an apartment with his wife; that he stayed in a town in this Commonwealth from January 10 to February 4 by reason of the requirements of his employment, and then returned to the city; that at the end of May the apartment in the city was given up and his wife came to the town here to supervise repairs to a house which she owned in the town; that he thereafter lived in a lodging house in the city until July, when he gave up his job; that he and his wife stayed with relatives in Maine from the middle of July until about August 18, when they went to her house in the town; that they lived there together until September 12, when he was killed in an accident; that while living in the town in August and September he had temporary employment; and that while in Maine and thereafter while living in the town here, he made statements to the effect that he still had his residence in Rhode Island and that if he got steady work in the town he would stay there, otherwise he could not stay there and would return to Rhode Island.

Where a resident of Rhode Island, who purchased an automobile in March, 1927, and registered it in that State, was not the owner of a motor vehicle during the period from January 10 to February 4, 1927, when he stayed in a town in this Commonwealth, that period was not to be added to the period from about August 18 to September 12, 1927, when he again stayed in that town, in determining the issues, whether or not on September 12 he had a "regular place of abode or business in the commonwealth for a period of more than thirty days in the year," within the meaning of G. L. c. 90, § 1, as amended by Sts. 1923, c. 464, § 1; 1924, c. 189, and whether or not on that date he was a "non-resident" automobile owner within the meaning of that statute and of G. L. c. 90, § 3, as amended by St. 1923, c. 431, § 1.

TORT, for conscious suffering and the death of the plaintiff's intestate. Writ dated December 20, 1927.

The action previously was before this court upon exceptions of the defendant, which were sustained in a decision reported in 277 Mass. 440.

Material evidence at the second trial in the Superior Court before *Keating*, J., is stated in the opinion. There were verdicts for the plaintiff, in the sum of $200 on the count for conscious suffering and in the sum of $3,976.51 on the count for death. The judge reported the action for determination by this court.

*M. J. Dray*, for the defendant.

*W. A. Murray*, for the plaintiff.

DONAHUE, J.  An automobile owned by the plaintiff's intestate and registered in his name in Rhode Island, while being operated by him under a Rhode Island license on a public highway in Milford in this Commonwealth, was in collision on September 12, 1927, with a motor truck owned by the defendant and operated by its employee.  The plaintiff's intestate, as the result of injuries received in the collision, died.  A jury in the Superior Court, after the denial by the judge of the defendant's motion for a directed verdict subject to its exception, returned a verdict for the plaintiff administratrix on counts seeking to recover damages for the death of the plaintiff's intestate and for his conscious suffering.  Thereafter the trial judge reported the case on a stipulation of the parties.

The stipulation in effect provided that judgment should be entered for the plaintiff upon the verdict if this court should decide that on the evidence the jury was warranted in finding that on September 12, 1927, the plaintiff's intestate was a resident of Rhode Island, and should decide that the trial judge did not err in refusing a certain request for instructions made by the defendant.  The stipulation further provided that if the court should decide that the evidence did not warrant such a finding by the jury or should decide that the judge erred in not giving the defendant's request, judgment should be entered for the defendant.  The request was "that in determining whether the plaintiff's intestate had, on September 12, 1927, a regular place of abode or business in Massachusetts for more than thirty days, the jury might consider the evidence that the plaintiff's intestate had a place of abode or business in Massachusetts from January 10, 1927, to February 4, 1927, as well as the evidence that the plaintiff's intestate had a place of abode or business in Massachusetts from August 18, 1927, to September 12, 1927, and that they might add together the total number of days in said two periods on which they found that plaintiff's intestate so had a regular place of abode or business in Massachusetts, and if the total thereof amounted to more than thirty days, plaintiff's intestate was not a nonresident within the meaning of the automobile statute."

The evidence pertinent to the questions here presented, viewed in its aspects most favorable to the plaintiff, is here summarized. On January 1, 1927, the deceased and his wife were living in a small apartment in Providence where he was employed by an ice company. From January 10 to February 4 of that year, while his wife stayed in Providence, he was at a lake in Wrentham in this Commonwealth assisting in the harvesting of ice for the Providence company by which he was employed. At the end of that period he went back to Providence. On March 9 he purchased an automobile in Rhode Island and registered it there. About May 30 his wife went to Wrentham where she owned a house in which she and her husband had not lived up to that time. It had been rented unfurnished until the preceding autumn. She went there for the purpose of supervising repairs which she was having made. She had furniture stored in the barn and moved enough of it into the house for her own needs while she stayed there. When she went to Wrentham the apartment which she and her husband had occupied was given up and he took a room in a lodging house in Providence and continued to work there, as might have been found, until some time in July when he "threw up" his job. Between the sixteenth and nineteenth of July the deceased gave up his room and with his wife went to Maine where they stayed about a month with relatives. The automobile was left in Providence. Sometime between the eighteenth and the twenty-second of August they left Maine. The wife went to Wrentham and the husband to Providence, where he got his automobile and then joined his wife at Wrentham and lived in her house with her until the day of his accident. He secured a job on the State road but the work was too hard for him and he gave it up after three days. He then had temporary work on another job for a week. Sometime after September 1 he made an arrangement with one Arata, who had an ice delivery route in Milford, whereby he was to work on the route for a week and if the work suited him he was to take over the route for a period while Arata was engaged in another trucking job, and at the end

of that time Arata would take back the operation of the ice delivery route again. .Arata testified that the trucking job he had would take usually about five or six weeks. It was during the second week that the plaintiff's intestate ran the ice delivery route that the accident occurred which caused his death.

About a week before the accident the deceased had a talk with a Massachusetts motor vehicle inspector in which he told the inspector that he still kept his Rhode Island residence; that he had not been in Wrentham thirty days; that he was just up there for a little while; and that he understood that he could stay there under the statutory nonresident owner's privilege for a period of thirty days. The inspector said that the deceased had until September 18 but if he remained after the eighteenth of September he should get a Massachusetts registration. The deceased replied that he did not have steady work but if he decided to stay he would get a Massachusetts registration. While in Maine he told his wife that they would go to Wrentham and if he got steady work there he would stay and if he did not he could not stay in Wrentham, that he would go back to Rhode Island, and if he got work he would stay. He told a neighbor in Wrentham shortly before the accident that he was not going to stay in Massachusetts, that unless he found a "better job" or a "steady job" or "something like that," he would go back to Rhode Island.

The plaintiff asserts, and the defendant denies, that under the statutes in force at the time of her intestate's injury, he had the rights and privileges of a nonresident owner in the operation of his automobile on the highways of this Commonwealth. G. L. c. 90, § 3, as amended by St. 1923, c. 431, § 1, provided that ". . . a motor vehicle . . . owned by a non-resident who has complied with the laws relative to motor vehicles . . . and the operation thereof, of the state or country in which he resides may be operated on the ways of this commonwealth without registration . . . ; provided, that said state or country grants similar privileges to residents of this commonwealth . . . ." The word "non-resident" in the foregoing section must be

taken to mean as provided in § 1 of c. 90, as amended, "any resident of any state or country who has no regular place of abode or business in the commonwealth for a period of more than thirty days in the year; provided, that any such resident who owns a commercial motor vehicle which is operated in the commonwealth for more than thirty days in the year shall not, as to such vehicle, be deemed a non-resident." G. L. c. 90, § 1, as amended by Sts. 1923, c. 464, § 1; 1924, c. 189. These statutes, since the injury to the plaintiff's intestate, have been substantially changed. (St. 1931, c. 142, §§ 1, 2. G. L. [Ter. Ed.] c. 90, §§ 1, 3. St. 1933, c. 188.)

The word "non-resident" is not defined in the statute in terms descriptive of the character of the residence in their home state or country of the persons to whom the privilege of operating in this State without a Massachusetts registration is given. "Any resident" who has a registration for his noncommercial motor vehicle in another State or country, if he has not a regular place of abode or business in this Commonwealth for more than thirty days in the year, has that privilege. Apart from the fact that his residence must be recognized in his home State or country by the registration of his automobile there, the purposes of the statute would not seem to require any further specification as to the character of his residence. The word "non-resident" as used in the statute is not to be given its usual meaning or always the same meaning. It is specially defined in the case of the owner of a noncommercial motor vehicle, as a resident of another State or country having his automobile registered there who has not a regular place of abode or business in this Commonwealth for more than thirty days in the year. It is to be given a somewhat different meaning in the case of the owner of a commercial motor vehicle. Such an owner, if his vehicle is operated here for more than thirty days in the year, "shall not, as to such vehicle, be deemed a non-resident." A resident of another State owning both a pleasure and a commercial motor vehicle might be a "non-resident" as to one and not as to the other. The essential

purpose of the statutory definition of a "non-resident" is to set a limit on the period in which the privilege granted may be exercised. It is not residence in this State, but the very definite fact that the owner of a noncommercial motor vehicle has a "place of abode or business" here for the stated period, which expresses the limitation of the statute. On the other hand, in specifying the kind of person who shall be entitled to the privilege, he is described not as one having a "place of abode or business" in any other State or country but as "any resident." As has been said of the word "resided," the word "resident" "like most other words may have different meanings or shades of signification dependent upon the connection in which it occurs and the result designed to be accomplished by its use." *Marlborough* v. *Lynn*, 275 Mass. 394, 396, 397. The statute in the same sentence uses different words to describe the character of one's living in another State where his automobile is registered and the character of his stay in this State. We think that the choice of a word capable of so many shades of meaning as the word "resident" has here significance and that in the construction of the statute it should be taken in a broad and general, and not in a restricted or narrow, sense.

On all the evidence the jury was warranted in finding that the plaintiff's intestate on the day of his injury was a "resident" of another State within the meaning of that word as it is used in the statutory definition of a "non-resident" owner of a motor vehicle. He asserted to a State motor vehicle inspector within a short time before his death that he had retained his residence in Rhode Island, that his stay in Massachusetts was temporary and that if he decided to remain here for a period of over thirty days he would procure a Massachusetts registration. His statements to others that he would leave this State unless he procured a steady job, in view of the fact that he did not have such a job, are consistent with his still retaining a residence in Rhode Island. There is no evidence of conduct on his part then or earlier which would require the jury to find otherwise. It is not contended by

the defendant that he was not a "resident" of Rhode Island on January 1, 1927. So far as residence in that State is concerned, the fact that in the winter his employment required him temporarily to engage in cutting ice in this State, still retaining the apartment in Rhode Island where his wife continued to live, did not require the finding that he then ceased to be a resident of that State. A man may have a "residence" in more than one State. *Avila* v. *DuPont*, 278 Mass. 83, 87. It was as a resident of Rhode Island that he registered his automobile there in March and thereafter he actually lived in the State all the time until the middle of July. We do not think that as matter of law it could have been ruled that when he then gave up his room in a lodging house in Rhode Island, left his automobile there and went on a vacation to Maine he ceased to be a resident of Rhode Island. The finding that he had no such intention was well warranted. Nor do we think that his stay of about twenty-four days at his wife's house in Wrentham was conclusive against his retention of his residence in Rhode Island within the requirements of the statute.

The plaintiff's intestate, as the record portrays him, was not in such circumstances or station in life where he had a free choice of the place where he should live nor was he the sort of man who chose to live in idleness or without steady employment. With him, the jury might well have found, the formation of an intention to give up his residence in Rhode Island or to select a new residence in Massachusetts was dominated by the necessity of obtaining steady work. His intention was a question of fact and was an essential element in the case. *Bellenger* v. *Monahan*, 282 Mass. 523, 531. The inference was warranted that he had not up to the time of his death formed the intention to cease to be a "resident" of Rhode Island within the meaning to be given that word in the statute, and on the facts appearing the jury was not obliged to find that he had lost or given up that status. Whether he was a resident of Rhode Island was a question of fact to be determined upon all the evidence and the proper

inferences to be drawn therefrom. *Jenkins* v. *North Shore Dye House, Inc.* 277 Mass. 440, 444.

The defendant, however, contends that in computing the thirty day period during which the intestate as a nonresident owner was under the statutes privileged to operate his vehicle in this State during the year, there should be added to the twenty-four days he was here in August and September the twenty-five days he spent in the State in January and February. It was said when this case was here before that the design of the statute was to afford to a nonresident owner of an automobile "the protection of the automobile registration of his home State or country during a temporary sojourn within this Commonwealth not exceeding a period of thirty days." *Jenkins* v. *North Shore Dye House, Inc.* 277 Mass. 440, 443, 444. The plaintiff's intestate during his stay in the State earlier in the year was not the owner of an automobile and was thus not then a person of the class which the statute was designed to privilege and protect. As a nonresident owner of an automobile he had a place of abode or business within the Commonwealth only about twenty-four days in the year. We do not think it a reasonable construction of the statute to hold that after he became the owner of an automobile registered in Rhode Island and thereafter made a temporary sojourn in this Commonwealth he was not entitled to the thirty-day period of privilege which the statute grants to nonresident owners. See *Bellenger* v. *Monahan*, 282 Mass. 523, 530, 531. There was no error in refusing to give the defendant's request for an instruction.

Since the jury was warranted in finding that the plaintiff's intestate was a resident of Rhode Island at the time of his injury and the trial judge did not err in refusing the defendant's request for instructions, in accordance with the terms of the stipulation judgment must be entered for the plaintiff upon the verdict.

*So ordered.*