McDOWELL, Respondent, v. FRIEDMAN BROS. SHOE COMPANY, Garnishee of SANDEFORD, Appellant.

St. Louis Court of Appeals, January 12, 1909.

1. **RESIDENCE: Garnishment: Judicial Definition: Instruction.** Definitions and observations which occur in judicial opinions can not always be given in charge to a jury and should not be given unless under the particular facts in the case it would assist the jury in reaching the right verdict. This is true of the judicial definition of "residence" where an instruction is asked in a garnishment proceeding.

2. ————: **Exemptions: Temporary Absence: Intention.** In a garnishment proceeding against the defendant's debtor and employer, where the question at issue was whether the defendant could claim his wages exempt, as a resident of the State under section 3435, Revised Statutes 1899, and where the evidence tended to show that at the time of the service of garnishment the defendant and his family had moved out of this State and were living in another State on account of the health of a daughter and that the defendant cherished the intention of returning to his residence in this State when her health should be restored, the jury should have been instructed that in order to deny the defendant the right of his exemptions they should find that he intended to remain away permanently.

4. ————: ————: **Domicile.** The terms "residence" and "domicile" are sometimes synonymous and sometimes not, according to the purposes for which they are construed. Section 384, Revised Statutes 1899, relating to attachments must be construed with section 3435 in determining the meaning of "residence" in a garnishment proceeding. In such case "residence" is synonomous with "domicile."

5. ————: ————: **Intention: "Floating" Intention.** While an indeterminate or "floating" intention to return to the State, by one who has moved out of it, would not make him a resident of this State so that he might claim his wages exempt in a garnishment proceeding, nevertheless, where a judgment defendant moved out of this State on account of his daughter's ill health with an intention to return as soon as her health should be restored, this was not a change of residence so as to prevent his claim of exemption. The intention to return was not a mere "floating" intention within a proper construction of the term.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster,* Judge.

REVERSED AND REMANDED.

*Nathan Frank, Richard A. Jones* and *Max W. Oliver* for appellant.

The court erred in giving to the jury the instruction 1 at the request of the appellee. State ex rel. v. Smith, 64 Mo. App. 319; Hamill v. Talbott, 81 Mo. App. 217; Griffith v. Bailey, 79 Mo. 472; Lankford v. Gebhart, 130 Mo. 632; Hall v. Schoenwecke, 128 Mo. 667; Walker v. Walker, 1 Mo. App. 404; State ex rel. v. Dayton, 77 Mo. 682; State ex rel. v. Banta, 71 Mo. App. 38; Vansickle v. Brown, 68 Mo. 634; Wheeler v. Chestnut, 95 Mo. App. 556.

*Abbott, Edwards & Wilson* for respondent.

The court did not err in giving to the jury the first instruction asked by respondent. State v. Snyder, 182 Mo. App. 514; Stotesbury v. Kirtland, 35 Mo. App. 159; Steele v. Leonari, 28 Mo. App. 684; Munds v. Cassidey, 98 N. Car. 558; Jones v. Alsbrook, 115 N. Car. 46.

STATEMENT.—At the request of plaintiff the court gave the following instructions:

"1. The court instructs the jury that the term 'residence' as used in these instructions means the place where one has a home, as that term is ordinarily used and understood among men, to which he habitually resorts for comfort, rest and relaxation from the cares of business and restoration to health, and at which he abides in the intervals when business does not call.

"And the court further instructs the jury that when one has removed his home as above described, from this State to another State, and has only an indeterminate purpose of returning to this State at some

future. time, such an indeterminate intention does not prevent a person from becoming an actual non-resident of this State.

"2.   If the jury believe from the evidence that B. H. Sandeford and his family, prior to August 10, 1906, removed his home out of the State of Missouri, and at said date had acquired a residence as defined in the next instruction at Pine Bluff, Arkansas, and had not prior to the 17th day of January, 1907, abandoned such residence (if the jury find that he had acquired a residence at Pine Bluff, Arkansas), then they will find for the plaintiff in the sum of $834.01 and costs; but if they find and believe from the evidence that said B. H. Sandeford had not prior to said August 10, 1906, acquired such a residence in Pine Bluff, Arkansas, then they will find in favor of plaintiff in the sum of $87.95 and interest at six per cent per annum from January 17, 1907, to date with costs."

The court of its own motion gave the following instruction:

"1.   The fact alone, if the jury find it from the evidence to be the fact, that the defendant B. H. Sandeford and family kept house or boarded in Pine Bluff, Arkansas, or at any other point outside the State of Missouri during the period stated in the other instructions, and during such time did not retain any place of dwelling in Missouri, does not of itself terminate his residence therein, unless you further find and believe from the evidence that he dwelt out of said State with that intent; and if the jury find from the evidence that said Sandeford left Missouri temporarily on account of the health of his wife or daughter, and that he in good faith intended at some definite time to return thereto and not permanently to change his place of abode, then your verdict will not exceed ten per cent (10 per cent) of the salary of $879.48 due Sandeford from the garnishee Friedman Bros. Shoe Co. from Au-

gust 10, 1906, to January 17, 1907, with interest thereon at 6 per cent from said last-named date."

At the request of appellant the court instructed the jury as follows:

"1. In determining the intention with which Sandeford had his wife and daughter come to Arkansas, whether he thereby intended to change his residence from the State of Missouri, the jury will take into account all of the testimony, circumstances and conditions surrounding such act, and if you find therefrom under the other instructions that it was not the intention in good faith of Sandeford to cease to become a resident of Missouri, then your verdict, if you find for the plaintiff under the other instructions, will not exceed ten per cent of the salary due Sandeford from the garnishee Friedman Bros. Shoe Co. from August 10, 1906, to January 17, 1907, with interest thereon at six per cent from said last-named date."

"2. The court instructs the jury that the burden of proof is upon the plaintiff, W. W. McDowell, to establish by a preponderance of the evidence that the defendant, B. H. Sandeford, at the time of the service of the writ of garnishment in this cause upon the garnishee Friedman Bros. Shoe Co., on the 10th day of August, 1906, was not the head of a family and not a resident of the State of Missouri, and unless the evidence preponderates to establish such condition, then your verdict cannot exceed ten per cent of the amount of salary, $879.48, which was due B. H. Sandeford during the period from said 10th day of August, 1906, to the 17th day of January, 1907, with interest thereon at six per cent from the last-named date.

"3. The court instructs the jury that if you find and believe from the evidence that Sandeford for the benefit of the health of his wife or family or other cause, had them go to the State of Arkansas without intention of creating a permanent place of abode there or of ceasing to reside in the State of Missouri, but

rather with the intent to return to said State so soon as their health would permit, and without intent on his part to become a resident of any other State than Missouri, then the jury are justified under such conditions in finding that Sandeford did not cease to become a resident of said State, and if you find under the other instructions in favor of plaintiff, your verdict will not exceed ten per cent of the salary of $879.48, which you find from the evidence to have been due Sandeford from the garnishee during the period from August 10, 1906, to January 17, 1907, with interest thereon at six per cent per annum from the last-named date."

GOODE, J. (after stating the facts).—Appellant, Friedman Bros. Shoe Co., was garnished under an execution issued in the case of respondent against H. B. Sandeford. The service of garnishment was August 10, 1906. Sandeford was employed by appellant company, and had been for about fourteen years, as a traveling salesman in the State of Arkansas. At the trial of the garnishment proceeding, judgment was given against appellant for $834.01, pursuant to the verdict of a jury, and this appeal was taken. Our statutes provide that no person shall be charged as garnishee for more than ten per cent of any wages due to a defendant in his employ, for the last thirty days of service, if the employee is the head of a family and a resident of this State. [2 Mo. Ann. Stat., sec. 3435.] The controversy in the case is regarding whether Sandeford was a resident of the State at the time of the service. The jury found against the garnishee for Sandeford's total wages and, therefore, must have found he was a non-resident. These are the facts: he was a married man with one child, a daughter, and during the years of his employment by appellant, had resided in St. Louis, to which point he returned for brief stays five or six times a year. In December, 1905, while his home was on McMillan avenue in said city,

both his wife and his daughter fell ill with pneumonia and were taken to the Deaconess Hospital, where they lay for two months. In February, 1906, they were well enough to be moved, and Sandeford gave up his house in St. Louis, which he had occupied as tenant, and during that month or March, took his family to Pine Bluff, Arkansas, where they boarded for three months, and then he took a lease for them until January, 1907, on a small house and furnished it with a portion of the furniture they had used in St. Louis, the remainder being left in storage in said city. The move to the south was made pursuant to the advice of the physician who had attended the daughter; advice given because her lungs remained affected after she had recovered from pneumonia. Mrs. Sandeford and daughter lived in the Pine Bluff cottage about three months and then, early in the summer of 1906, went to visit the former's mother in Mississippi where they stayed during the summer, but the house in Pine Bluff was kept meanwhile and they returned to it in the fall of 1906, and occupied it until late in January, when it was given up and the furniture in it sold. Thereafter the family lived in a hotel or boarding house in Pine Bluff until March 25th, when they came to St. Louis, where they remained until May and then went again to Mississippi. While they were in Pine Bluff, Sandeford would stop with them when he came into that town on his business trips. The second visit to Mississippi continued until October, 1907, when they went to Shawnee, Oklahoma, to consult a physician who had treated the daughter in her childhood, and in whose skill the family reposed special confidence. Sandeford testified he always registered from St. Louis and voted and paid taxes there when he performed those duties, but had done neither for several years; that at no time had he paid taxes or voted in Arkansas; that he took his family to Pine Bluff in the spring of 1906 in the hope of benefiting their health, particularly the daughter's, and his con-

stant intention was to return to St. Louis and make it his home again when the daughter's health was sufficiently restored.

The instructions to the jury granted at respondent's request, are called into question on the appeal and particularly the first. It is said that instruction did not require the jury to find Sandeford, who it is admitted had been a resident of St. Louis, left this State with the intention of changing his residence. Further, that it suggested this thought; if he had abandoned a home in St. Louis, of the character described, and had established one of the like character in Pine Bluff, he was no longer a resident of this State, even though he preserved a fixed intention to remain away only temporarily, and to resume living here as soon as was consistent with the purpose of his removal. The instruction was drawn so as to define the sense in which the term "residence" was used in all the instructions. Though it purported to describe what would constitute a legal residence in St. Louis, it impliedly described what would constitute one in Pine Bluff; and if the definition was misleading, it must have been prejudicial to Sandeford and appellant. The first paragraph of the instruction was copied from the opinion of the Supreme Court in State v. Snyder, 182 Mo. 462, 514, where it is approvingly quoted from an opinion of the Supreme Court of Michigan, and counsel for respondent say it is an accurate definition of a person's residence, according to the decision of our Supreme Court. But many observations may occur in the judicial discussion of a question, which are not intended to be given in charge to a jury, and cannot be with propriety unless, under the facts of the particular case, they will assist the jury in reaching a right verdict. What is meant by the terms "residence" and "domicile" and when they are synonymous and when not, have been considered by courts with reference to different purposes; such as a person's testamentary capacity,

duty to pay taxes, right to vote, administer on an estate, succeed to personal property, hold an office, claim exemption from military service, maintain the defense of the Statute of Limitations, resist an attachment against his property, claim the benefit of the exemption of homestead laws and challenge the jurisdiction of a court. [See note to Guier v. O'Daniel, 1 Am. Lead. Cas. (5 Ed.), 877, 887.] It is not to be supposed what is said in passing on a case belonging to one of those classes, will always be appropriate in a case of another class, or that the rules prescribed in the different cases will exactly coincide. [Id., loc. cit. 888.] In Snyder's case the Supreme Court was concerned with the question of whether the words "inhabitant of" the State and the words "usually resident" therein, were of identical meaning in the statute permitting an indictment to be found against a person for a felony more than three years after the commission of the crime, if, meanwhile, he should not have been an inhabitant of, or usually resident in, the State. [2 Mo. Ann. Stat., sec. 2421.] Several decisions by the Supreme Court of Michigan, in which a similar point had been considered, were cited, and the language of the first paragraph of the instruction was quoted from one, as it had been quoted by the Michigan court from the opinion in Chaine v. Wilson, 1 Bosw. 673. Our Supreme Court did not mean to state a definition of the word "residence" which could be given to a jury in every litigation wherein the meaning of said term might be involved. This is so because the passage omits the element of intended permanency in the description of residence; an element required by our statute (section 4160) which says residence is where a person's family shall permanently reside, and, for most purposes, by universal law; permanency, not in the sense that the residence must never be changed, but in the sense that there is no intention to change it. [Story, Confl. Laws (8 Ed.), p. 43.] In the present case we find admitted one

of the principal facts which, according to all the authorities, enters into the question of whether a change of residence has occurred; the physical fact of the removal of Sandeford and his family from the place in St. Louis which it is agreed had been their residence. [Ringgold v. Barley, 5 Md. 186; Harral v. Harral, 39 N. J. Eq. 279, 285; 10 Ency. Law (2 Ed.), 20.] The other controlling element, and the one in dispute, is the purpose Sandeford entertained when he moved to Arkansas, or the purpose which, perchance, he formed after he had moved. That is to say, did he break up housekeeping in St. Louis and go to Pine Bluff with the intention of abandoning his residence in St. Louis; or, if he left with no such intention, did he afterwards conceive it? If either of these purposes was resolved upon, he ceased to be a resident of this State and if neither was, he remained a resident of it. [State ex rel. v. Dayton, 77 Mo. 678; State ex rel. v. Banta, 71 Mo. App. 32, 41.] If he moved to the south for a temporary sojourn and a special purpose, to-wit; the restoration of his daughter's health, cherishing the intention when he left and while he was absent, to keep his residence in St. Louis and return there as soon as she was well, his residential status continued as it had been. [Scoville v. Glassner, 79 Mo. 449; Hall v. Schoenecke, 128 Mo. 661, 667.] The tendency of the first instruction was to rivet the jury's attention on the characteristic requisite to make a dwelling a residence in a legal sense, rather than on Sandeford's purpose regarding the abandonment or the retention of his St. Louis residence, which was the main issue to be tried. Counsel for appellant are right in their argument that the instruction was apt to lead the jury to think Sandeford acquired a residence in Arkansas, merely because he put his family in a house where he stayed with them when in Pine Bluff; and certainly it was not so drawn as to throw into clear relief the issue of his purpose in doing so, though this was the

most influential fact on the question of whether he had lost his Missouri residence. It is said the other instructions sufficiently emphasize this question; but inasmuch as all of them refer to the first for a statement of the essential element of a residence in Pine Bluff or in St. Louis, and as this statement did not include the notion of intended permanency, the jury was left to consider the case with an imperfect and confusing definition of residence.

It is contended for respondent the word "residence," in the exemption statutes does not mean domicile, but the place where a person actually abides or dwells, regardless of where his domicile is. Hence it is said if Sandeford ceased to abide in Missouri, he lost the right to claim any part of his wages as exempt from garnishment, even though his domicile continued to be in this State. The instructions for appellant tacitly rejected this notion, but it is advanced in argument in support of those given for respondent. Our difficulty in this phase of the case has been with a remark in the opinion of Stotesbury v. Kirtland, 35 Mo. App. 148, 159, a suit in equity wherein, on the appeal, the court found the facts. Kirtland had assigned to his minor children the income of an estate which had been settled in trust for his use. The assignment was made after the suit had been brought for the purpose of subjecting the income to the payment of a judgment against him. He had lived in Chicago for a year and was employed there, but his previous residence had been in St. Louis. This court found he was not a resident of Missouri, had left there meaning to return as soon as it might be practicable or convenient, and there was no proof his wife meant to return with him. The point for decision was whether Kirtland was a resident of this State, and the facts touching the question differed from those before us in that Kirtland had changed his place of business, and whatever intention he had to come back to Missouri was not shared

by his family. In the present case Sandeford continued to travel from St. Louis after the removal to Pine Bluff, and he and his family had a fixed purpose to resume living here when the daughter's health was restored. The facts of the Kirtland case do not make it a precedent for the decision of this one; but in the course of the opinion the court said the residence which entitled a person to claim the benefit of our statutes of exemption, is actual residence as distinguished from domicile; and that the legal domicile of a person might continue in Missouri for some purposes, while he would become a non-resident in such sense as to bar his exemption rights. We have found no support for this view in our statutes or decisions, or in the decisions of other jurisdictions. In legal usage residence and domicile are not of identical meaning for all purposes. Their meaning is different as regards the suspension of the Statute of Limitations by absence from the State. [Hamill v. Talbor, 81 Mo. App. 210, 216; Sleeper v. Page, 15 Mass. 349; Bennett v. Watson, 21 N. Y. App. Div. 408.] In New York and some other States, they are given dissimilar meanings in construing the attachment statutes. [In re Thompson, 1 Wend. 43; Altson v. Newcomer, 42 Miss. 187; Riswick v. Davis, 19 Md. 82.] And there are dicta to the same effect in the Missouri cases. [Hamill v. Talbot, 81 Mo. App. loc. cit. 216.] But a careful reading of the decisions on our attachment statutes will indicate that residence and domicile mean the same in those grounds for attachment which depend on residence in Missouri. [Greene v. Beckwith, 38 Mo. 385; Chariton Co. v. Moberly, 59 Mo. 238; Englehart v. Burrell, 66 Mo. App. 117, 123.] In the Kirtland case the court was dealing with the exemption and not the attachment statutes, and if the opinion meant that, by residing out of Missouri temporarily and without intention to abandon a residence here, a person will lose the benefit of the exemption statutes, the doctrine, in our opinion, is un-

sound and in conflict with the decision of this court in State to use v. Knott, 19 Mo. App. 151. What is really a rule of exemption, though found in the chapter on Attachments, is prescribed in the last clause of section 384 of the statutes, which says: "No property or wages declared by statute to be exempt from execution, shall be attached, except in the case of a non-resident defendant, or a defendant who is about to move out of this State with intent to change his domicile." This provision plainly intends by "non-resident defendant" one whose domicile is out of the State, as it classes non-resident defendants with defendants about to move out of the State with intent to change their domicile. As this is properly an exemption statute, we consider it *in pari materia* with section 3435 of the Garnishment Act, which says that not more than ten per cent of the wages of an employee for the last thirty days of his service, shall be subject to garnishment if he is the head of a family and a resident of the State. The word "resident" as there used is the antithesis of the word "non-resident" as used in section 384, and involves the idea of residence in the domiciliary sense; though we have no occasion to say whether or not it is co-extensive in every respect with domicile. In Hackett v. Gihl, 63 Mo. App. 447, the Kansas City Court of Appeals construed the two statutes with reference to each other, on facts showing Gihl was about to move out of the State with the intent to change his domicile, and on a claim that, notwithstanding this intention, his wages were exempt from garnishment under section 3435 (sec. 5220, R. S. 1899). It was held the garnishment section meant an employer could not be charged on account of wages due an employee for the last thirty days' service, unless the employee was about to move out of the State with intent to change his domicile. By parity of reasoning if an employee moves out of the State, but with no intention of changing his

domicile or residence, his exemption rights as to wages, continue.

It is insisted Sandeford's purpose to return to Missouri was not settled but indeterminate; was what is called in the books, a "floating" purpose, which does not suffice to retain a residence. The case of Stotesbury v. Kirtland, is a precedent for this position, as to which it is in accord with the authorities elsewhere. Whether Sandeford had a settled, instead of a "floating," intention to keep his residence in St. Louis and return here when his daughter's health was restored, was a question for the jury on all the facts. In dealing with it one of the many obscure points in the law of domicile arises; *i. e.*, what is an indeterminate or floating purpose to return, which will not prevent a change of abode from working a change of residence? The expression "floating intention" appears to have been first used by Story. Among his rules on the subject of domicile is this one: "Eighthly. If a person has actually removed to another place, with an intention of remaining there for an indefinite time, and as a place of fixed present domicile, it is to be deemed his place of domicile, notwithstanding he may entertain a floating intention to return at some future period." [Conflict of Laws (8 Ed.), p. 50.] We have looked into many cases touching this subject, and from what is said in them, interpreted with reference to the facts before the court, we conclude an indeterminate or floating intention to return to a residence from which a party moves, does not include an instance where the intention is to return on the occurrence of some specific event which, in reason, may be anticipated; like the purpose cherished by Sandeford, if the testimony before us is true, to resume his abode in St. Louis when his daughter's health would permit. In Hall v. Schoenecke, 128 Mo. loc. cit. 667, the Supreme Court said a temporary absence of a person from his usual residence, through a series of years, does not necessarily cause a loss

of residence, and whether a change was effected in any case depends upon the intention with which the removal was made; that removal by a person for the sole purpose of educating his children, without an intention of abandoning his usual residence, and with the intention of returning thereto when his purpose has been accomplished, will not constitute such a change of residence as would, under the law, entitle him to vote at his temporary abode. [See, too, Scoville v. Glassner, 79 Mo. 449; State v. Sanders, 105 Mo. 189; Lankford v. Gebhart, 130 Mo. 621; Walker v. Walker, 1 Mo. App. 404.] The expression indeterminate or floating intention, probably refers to those removals from homes which are accompanied by no more firmly fixed resolution to return than is involved in an intention to do so at some time, if the general conditions of life should make such a course expedient or desirable. One opinion read by us but not at hand just now, held a charge to the jury in the language of Justice Story good; and, on the whole, we see nothing wrong in the way this matter was presented in the instructions before us. The following authorities shed light on the subject, as well as on the other questions involved in the appeal. [Guier v. O'Daniel, supra, and note; Bradstreet v. Bradstreet, 18 D. C. 229; Stratton v. Bingham, 2 Sneed (Tenn.) 420; Kellor v. Baird, 5 Heisk. (Tenn.) 39; Isham v. Gibbons, 1 Bradf. (N. Y.) 69; Crawford v. Wilson, 4 Barb. 504; Binggold v. Bailey, 5 Md. 168; Gardner v. Board of Education, 5 Dak. 299; State v. Groome, 10 Iowa 308; In re Steer, 3 H. & N. *597; Morehouse v. Lord, 10 H. of L. Cas. 272.]

The judgment is reversed and the cause remanded. *Nortoni, J.,* concurs; *Reynolds, J.,* not sitting.