CITY OF MARLBOROUGH *vs.* CITY OF LYNN.

SAME *vs.* CITY OF BOSTON.

Middlesex.      December 2, 1930. — May 25, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Settlement. Domicil. Practice, Civil,* Findings by judge, Agreed statement of facts, Report. *Words,* "Actually resided."

A man, having acquired a settlement in a city, moved to a second city with his family in 1915. In February, 1917, he deserted his family and went to a third city, where he resided at a certain address. He gave that as his address in June and July, 1917, and January, 1918. On July 18, 1918, he left the third city, removing all his personal effects and paying his final bill at his rooming house. He indicated no intention of returning, and did not return, to that address or to any other place in that city. He went to the home of a brother in the first city and remained there until July 21, 1918. He was inducted into the military service of the United States the next day. After his discharge from the service in November, 1918, he lived at his brother's home for a period of two weeks and thereafter his whereabouts were unknown. In actions by the second city against the first and third to recover the amount expended by the plaintiff for support of the man's family, the above facts were agreed upon. A judge who heard the action, stating that he inferred that the man actually resided and had his domicil in the third city on July 18, 1918, and that he did not change that actual residence in the interval of four days before his induction into military service on July 22, 1918, reported the actions without decision under G. L. c. 231, § 111. *Held,* that

(1) The inferences drawn by the trial judge from the agreed facts were warranted and must stand as conclusive;

(2) Under the terms of G. L. c. 116, § 1, Fifth, as amended by St. 1922, c. 177, judgment should be entered for the defendant in the action against the first city and for the plaintiff in the action against the third city.

Two ACTIONS OF CONTRACT. Writs dated January 9, 1926.

The actions were heard together in the Superior Court by *Qua*, J., upon an agreed statement of facts, material portions of which appear in the opinion. The judge reported the actions without decision for determination by this court under G. L. c. 231, § 111.

*H. M. Pakulski*, Assistant Corporation Counsel, for the city of Boston.

*W. L. Temple*, for the plaintiff.

*J. M. Cashman*, Assistant City Solicitor, & *P. F. Shanahan*, City Solicitor, for the city of Lynn, submitted a brief.

RUGG, C.J. By these actions of contract, one against the city of Lynn and the other against the city of Boston, the plaintiff seeks to recover the amount expended by it for the support of the family of Ralph Halliwell. No question is raised as to the amount so expended, or as to compliance with all preliminary statutory requirements as to notice. The only issue is whether either defendant is liable. The cases were submitted to the court sitting without a jury upon agreed facts in substance as follows: Ralph Halliwell, born in Michigan, acquired a settlement in Lynn but moved with his family to Marlborough to live in 1915. In February, 1917, he deserted his family, went to Boston, and there resided at 222 West Springfield Street and was employed at 1042 Boylston Street. In July, 1917, he was arrested for nonsupport of his family and gave his residence as 222 West Springfield Street, Boston. The records of the probation officer show that he resided in Boston from August 10, 1917, to July 18, 1918. The draft records of the War Department show that he registered with the draft board in Boston on June 5, 1917, giving his home address and his place of employment in Boston as stated above. On January 4, 1918, he executed a questionnaire giving the same address in Boston. On July 18, 1918, he left Boston, removing all his personal effects, paying his final bill at his rooming house, and indicated no intention of returning, and did not return, to that or any other place in Boston. After receiving notice to report for military service, the date of

which is not stated, but which manifestly could not have been earlier than July 18, 1918, he went to his brother's home at 573 Essex Street, Lynn, and remained there until July 21, 1918.   While at his brother's home he did not arrange with his brother, or any member of his brother's family, to establish a residence there, and upon departing did not leave at his brother's home any personal or other effects.   He was inducted into the military service of the United States on July 22, 1918, giving his address at the time of enlistment as 573 Essex Street, Lynn, Massachusetts.   After his discharge from the service in November, 1918, he lived at his brother's home above described for a period of two weeks.   Since then his whereabouts is unknown.

The trial judge states in his report: "In each case I infer from the facts agreed that Halliwell actually resided and was domiciled in Boston on July 18, 1918, and there is nothing in the agreed facts in either case which satisfies me or from which I feel I ought to infer as a fact that, in the four days between July 18 when Halliwell left Boston and July 22 when he was inducted into the service of the United States, he changed his residence or domicil to any other place.   I therefore infer in each case that Halliwell's actual residence and domicil remained in Boston on July 22."

The rights of the parties depend upon the interpretation of the part of G. L. c. 116, § 1, Fifth, as amended by St. 1922, c. 177, which so far as material is in these words: "Any person who was inducted into the military or naval forces of the United States under the federal selective service act . . . whether he served as a part of the quota of the Commonwealth or not, . . . shall be deemed to have acquired a settlement in the place where he actually resided in this Commonwealth at the time of his induction . . . ."   The vital words of this statute with respect to the facts of the case at bar are "actually resided."   The question to be decided is one of statutory construction.   "Resided," like most other words may have different meanings or shades of signification dependent upon the connection in which it occurs and the result designed to be

accomplished by its use. "Reside" not infrequently is
employed in common speech to express the same idea as
to live, dwell, abide, inhabit, have one's home, or possess
a domicil. *Shaw* v. *Shaw*, 98 Mass. 158. But cases arise
where there is a distinction between domicil and residence.
*Borland* v. *Boston*, 132 Mass. 89. *Palmer* v. *Hampden*, 182
Mass. 511. *Martin* v. *Gardner*, 240 Mass. 350, and cases
reviewed. *Dillaway* v. *Burton*, 256 Mass. 568, 577, 578.
One may have a residence in a place for reasons of perform-
ing the duties of an office, transacting a business, seeking
cure for ailments, or pursuing pleasure, and yet have his
domicil or home in a different place. It was said by Chief
Justice Shaw in *Sears* v. *Boston*, 1 Met. 250, 251: "Actual
residence, that is, personal presence in a place, is one cir-
cumstance to determine the domicil, or the fact of being an
inhabitant." Manifestly, in that connection "personal
presence in a place" did not mean and was not intended to
imply a mere visit or a fleeting stay, such as one might make
with a relative, or in a hospital, or at an inn or other public
or private shelter or place of entertainment while await-
ing removal of personal presence elsewhere. Residence im-
ports something of expected permanence in way of personal
presence. It signifies intended continuance as distinguished
from speedy change. This natural meaning of the word is
accentuated in the present statute by the immediately pre-
ceding word "actually." The natural function of that
word is to emphasize the dominant thought of the word or
phrase with which it is coupled. *Koshland* v. *Columbia
Ins. Co.* 237 Mass. 467, 475, and cases collected and re-
viewed. *Paris* v. *Hiram*, 12 Mass. 261. *Wise* v. *Whit-
burn*, [1924] 1 Ch. 460, 470. It imports reality as dis-
tinguished from form, method, hypothesis, conjecture, or
surmise. It is the antonym of constructive, speculative,
nominal, fictitious or feigned. "Actually resided," there-
fore, means a real residence, a residence existing in truth.
An evanescent attendance does not satisfy the requirement
of those words. This meaning conforms to the apparent
aim of the statute. That aim was to establish a simple
rule, easy of comprehension and application, whereby to

determine the legal settlement of those joining the military or naval forces of the nation in the Great War. That rule avoids extended investigation into the past. It adopts the readily ascertainable facts shortly preceding and accompanying induction into the services as the test. It avoids the temporarily unsettled factors fairly incident to such induction.

We think it is plain from the facts agreed that the inference drawn by the trial judge, to the effect that Halliwell actually resided and had his domicil in Boston on July 18, 1918, was justified, and that he did not change that actual residence in the interval of four days before his induction into military service on July 22, 1918. The trial judge acted in accordance with the procedure outlined in *Atlantic Maritime Co.* v. *Gloucester*, 228 Mass. 519. Since the inferences drawn by him from the agreed facts were warranted, they must stand as conclusive. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143.

The result is that in the action against the city of Lynn judgment is to be entered for the defendant. In the action against the city of Boston, judgment is to be entered for the plaintiff.

*So ordered.*