Earl KELSO, Plaintiff-Appellant,

v.

William B. KELSO, Defendant,

and

State Farm Mutual Automobile Insurance Company, a Corporation, Garnishee-Respondent.

No. 45995.

Supreme Court of Missouri, Division No. 1.

Nov. 12, 1957.

Bloodworth & Bloodworth, Poplar Bluff, for appellant.

Blanton & Blanton, Sikeston, for garnishee-respondent.

HOLMAN, Commissioner.

On October 17, 1955, plaintiff, Earl Kelso, obtained a judgment for $15,000 against his brother, William B. Kelso, for injuries alleged to have been caused by William's negligence in the operation of his automobile. In the instant garnishment proceeding, plaintiff sought to collect said judgment from State Farm Mutual Automobile

Insurance Company, garnishee. It was admitted by that insurer that it had issued a policy of liability insurance to William, which covered the car in question, but it refused to defend the suit filed against him and sought to escape payment of the resulting judgment (to the extent of $10,000 which was the maximum coverage applicable) because of policy provisions excluding coverage under certain conditions which will be hereinafter more fully discussed. A trial before the court (a jury being waived) resulted in a finding that the garnishee was not indebted to defendant and judgment was entered discharging said garnishee. Plaintiff has duly appealed.

Upon this appeal plaintiff, of course, contends that the garnishee is liable for the payment of the judgment (to the extent of coverage) because the policy was admittedly in force at the time of his injury. Garnishee, however, contends that liability is excluded by policy provisions (1) that the policy should not apply "to the insured or any member of the family of the insured residing in the same household as the insured," (2) that the automobile was declared to be "fully owned by insured," it being contended that plaintiff was a joint owner with defendant, and (3) that "No action shall lie against the company unless * * * the amount of the insured's obligation to pay shall have been finally determined by judgment * * * after actual trial," it being stated that the defendant defaulted in the instant case and hence there was no actual trial. In this connection it may be stated that the trial court did not file any memorandum indicating the grounds for its decision and we therefore do not know which one or more of the foregoing contentions formed the basis of its judgment.

■■■ "In a case of this nature it is our duty to review the case de novo, weigh the competent evidence, and reach our own conclusions as to the facts, but 'due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.' Section 510.-310(4), RSMo. 1949, V.A.M.S." Franck Bros., Inc., v. Rose, Mo.Sup., 301 S.W.2d 806, 811. In this connection it should perhaps be noted that while it may be stated generally that plaintiff had the burden of proving the facts essential to the garnishee's liability, in the instant case, where garnishee seeks to escape coverage solely because of policy exclusions, the burden was upon it to prove facts which would make those provisions applicable. Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, 57 A.L.R. 615.

■■■ On the first point briefed our task is to determine whether plaintiff resided in the same household as the insured. The word "household" has been generally defined as "those who dwell under the same roof and compose a family." Webster's New International Dictionary, Second Edition. We are not asked to construe the policy provision. It has been held, however, that the instant provision would exclude liability where the insured and the claimant are unmarried brothers living together in the home of their parents. Senn v. State Farm Mutual Automobile Insurance Co., Ky., 287 S.W.2d 439. The issue before us is one of fact. If, as contended by garnishee, plaintiff and defendant were both residing in the home of their parents at the time of the injury, there was no coverage under the policy. On the other hand, if, at that time, defendant resided in his parents' home and plaintiff elsewhere, garnishee may not avoid liability by reason of the provision in question.

Plaintiff's father and mother lived on a farm about two miles from Pine, in Ripley County, Missouri. Plaintiff and defendant were both single and at the time of his injury plaintiff was 23 and defendant was 25 years of age. Prior to September 1, 1954 (with the exception of three months spent in St. Louis in 1952) they had always lived in the home of their parents. Plaintiff testified that in September 1954 he

had been employed by Comer Hicks to work on his farm located near Risco, in New Madrid County, Missouri, and at that time had moved to the Hicks farm where he had resided until trial time; that on November 2, 1954, he went with his employer and Lowell Tanner to Ripley County and set up a deer hunting camp in the woods; plaintiff stayed at the camp and helped with the cooking; that while there he visited in the home of his parents for a little while but did not "stay" there. Plaintiff was injured on November 4, 1954, while on a trip to Doniphan with defendant. He stated definitely that on the date of the accident he was living near Risco and that he and the defendant were not residing in the same household.

Comer Hicks testified that plaintiff began working for him at his farm near Risco in September 1954 and had continued to work for him until the date of trial; that when he came to work for him plaintiff moved a stove, bedding, and perhaps other household belongings, and since that time had lived in a trailer house located "two miles north of Risco on 8 ditch"; that he was residing there on November 4, 1954, although temporarily staying at the deer camp.

Plaintiff's testimony was also corroborated by that of Lowell Tanner, a school teacher. Tanner stated that he had taught at Pine during the 1953–1954 school year and at Risco the following year; that he became acquainted with Mr. Hicks who was president of the school board at Risco; that Mr. Hicks had asked him to recommend some young man to work for him on his farm; that he had suggested Earl Kelso, who was thereafter employed by Hicks and moved to the Hicks farm approximately the first of September 1954; that he had been in the small trailer house occupied by plaintiff and had seen his belongings there; that plaintiff went to the deer camp to help cook, and took his cot along and stayed with the others at the camp; that plaintiff was still living in the trailer house at the time of trial and defendant had not resided with him at that place.

Garnishee, in its effort to prove that plaintiff was residing in the same household as defendant, relied upon the following evidence: (1) an admission by plaintiff that when he entered the hospital on November 4, 1954 (shortly after receiving serious injuries) he had given his address as Pine; (2) a written statement given by plaintiff (while in the hospital) to garnishee's claims adjuster in which it was recited that plaintiff resided with his father, mother, sister and brothers on a farm about two miles from Pine, and that he and William were members of the same household on November 4, 1954, when he was involved in an accident; and (3) a written statement signed by defendant which contained substantially the same recitals as that given by plaintiff. The objection was made that this statement was not admissible because it was hearsay. Garnishee contends that it constituted an admission against interest and hence was properly admitted. We will assume for the purpose of our decision (but do not decide) that it was admissible.

We find from the evidence that plaintiff, on the date of his injury and for several weeks prior thereto, had resided in the trailer house on the farm of Comer Hicks and hence was not "residing in the same household as the insured." Plaintiff and two apparently disinterested witnesses gave positive, affirmative testimony to that effect. There was no *testimony* to the contrary. Hicks and Tanner appeared to be substantial citizens in the community where they lived. As stated, the former had been chosen as president of the school board and the latter had been employed as a school teacher. We find nothing in the transcript which would tend to indicate that they were not testifying truthfully.

On the other hand, we do not attach any great significance to the admissions upon which garnishee relies. To an ordinary layman, the important facts detailed

in the two statements were the description of the manner in which plaintiff received his injuries, and the extent thereof. The recitals heretofore noted were likely considered by these brothers as formal preliminary statements which were of no particular importance. The unreliability of recitals of that kind is demonstrated by the following sentence appearing in William's statement, "None of us have resided anywhere else but at home with our parents all our lives," when it is conceded that William and Earl lived in St. Louis for three months in 1952. Moreover, the words "home," "household," and "reside" have many different meanings to different people under various circumstances. Earl had lived on his father's farm substantially all of his life and had been away but a few weeks. In a sense (at least, sentimentally) he probably considered the farm as his "home" and, in a very general way, felt that he was still a part of the family group, and hence recitals of the kind we have noted would not particularly challenge his attention. What we have just said would also apply to the recitals in the statement William signed. Likewise, and for similar reasons, we do not find the fact that plaintiff gave Pine as his address upon entering the hospital to be persuasive. As indicated, we have the view that these general admissions, under the circumstances disclosed in evidence, are not sufficient to overcome the weight of the testimony to the contrary given by plaintiff and the two disinterested witnesses.

■ The policy in question contained a declaration that "The automobile described herein is fully owned by the insured unless otherwise stated in the exceptions." No exception was stated. The second point briefed by garnishee is that it is not obligated to pay the judgment herein (to the extent of the policy limit) because the automobile described in the policy was not "fully owned" by the named insured, William B. Kelso. It is said that plaintiff and defendant each owned an undivided one-half interest in the car.

The automobile described in the policy was a 1941 Buick which was purchased while Earl and William were working in St. Louis so they would have a means of transportation to and from their place of employment. The title to the car was issued in William's name. However, garnishee's contention that he was not the sole owner is based upon the testimony of Earl on cross-examination to the effect that he and William each paid one half of the purchase price and owned the car jointly. In his written statement heretofore mentioned he stated further, "We put the title in William's name so we could keep his insurance he had on a 1940 Ford for the Buick." In later testimony plaintiff stated that he did not pay anything on the purchase price of the car but did give William $75 so that his brother could purchase a car and hence plaintiff would have transportation back and forth to work.

■ Under the provisions of Section 301.210 RSMo 1949, V.A.M.S., there can be no valid sale of a used automobile unless the holder of the certificate of ownership shall endorse thereon an assignment in the form prescribed by the director of revenue and deliver the same to the buyer at the time of transferring possession of the said motor vehicle, and the buyer shall promptly present such certificate with his application for registration to the director of revenue and a new certificate of ownership shall be issued to the buyer. That procedure was apparently followed when the instant automobile was purchased, and it seems clear that William acquired the legal title to said car. Moreover, it has been uniformly and consistently held in this state that one who attempts to purchase an automobile without obtaining said assignment of the certificate of ownership acquires no title whatever and has no insurable interest in the automobile. State ex rel. Connecticut Fire Ins. Co. of Hartford, Conn. v. Cox, 306 Mo. 537, 268 S.W. 87, 37 A.L.R. 1456; Craig v. Ruescler Motor Co., Mo.App., 159 S.W.2d 374. See also, Mackie and Williams Food Stores v.

Anchor Casualty Co., 8 Cir., 216 F.2d 317, in which a number of Missouri decisions are extensively reviewed. The aforementioned statute specifically provides that such a sale shall be void.

■ It follows from the foregoing that plaintiff had no title to the car in question and no insurable interest therein. The provisions of Section 301.210, supra, relating to the transfer of title, are absolute and mandatory and have been rigidly enforced by the courts of this state. In view of that statute, and the many decisions that have adhered to its terms, it would seem inconsistent and illogical to hold that one furnishing a part of the purchase price of an automobile under some oral understanding with the only person named in the certificate of ownership, would acquire such title or ownership as to void a policy of insurance issued to the title holder named in said certificate, on the ground that the car was not "fully owned" by him. If, as we have repeatedly held, an alleged purchaser of an automobile who does not hold a certificate of ownership has no title and no insurable interest, how can it reasonably be said that some other alleged interest of such a person must be disclosed to the insurer in order to comply with a full ownership declaration in a policy issued to the only person named in the certificate of ownership?

The Missouri cases cited by garnishee do not support its contention. In Evens v. Home Ins. Co. of New York, 231 Mo.App. 932, 82 S.W.2d 111, an automobile fire insurance policy was held void under a sole ownership clause where the policy was issued before plaintiff obtained the assigned certificate of title, it being said that the policy was void ab initio because the insured had no insurable interest when it was issued. That case actually supports the views we have heretofore expressed. Fulbright v. Phoenix Ins. Co. of Hartford, Conn., 329 Mo. 207, 44 S.W.2d 115, involved a fire insurance policy insuring a farm building. The title to the land was held by a hus-

band and wife as tenants by entirety. Such title was held not to be a compliance with a sole ownership provision in a policy issued in the name of the husband alone. The remaining case cited, Hirsch v. City of New York Ins. Co., 218 Mo.App. 673, 267 S.W. 51, is not applicable because the automobile involved therein was purchased at a time when it was not required by law that the seller give the purchaser a certificate of ownership with assignment thereon, as is now required by Section 301.210, supra. We hold that under the particular facts of the instant case there was no violation of the "full ownership" declaration.

We will next state the facts which form the basis of garnishee's remaining contention. On June 4, 1955, plaintiff filed the instant suit against the defendant seeking damages in the sum of $25,000. The petition and summons were served upon defendant and he delivered the same to the agent of garnishee. The liability insurance policy in question provided that the insurer (garnishee) would "defend any suit against insured" and "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile. * * * but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

However, on June 17, 1955, garnishee wrote defendant a letter in which it stated: "We have received report of accident involving your 1941 Buick 4-door sedan insured under the above policy number," and "have also just received through our adjuster, William C. Batson, Jr., Petition and Summons which had been served on you for a lawsuit brought by Earl Kelso * * *. Please be advised that, because of the terms of Exclusion E [the provision relating to members of the same family residing in the same household], among other reasons, State Farm Mutual Automobile Insurance Company hereby disclaims and

denies any coverage or liability or protection to you or to Earl Kelso under Coverage A of Policy No. 396994-A27-25 for the payment of any damages arising out of said accident. Please, therefore, govern yourself accordingly in any dealings or communications with or claims made against you by Earl Kelso or his representatives. You are free to settle, deny, compromise, investigate or defend this lawsuit upon such basis as may appear advisable to you or your representatives." Our disposition of the first two points considered in this opinion will indicate our view that this denial by garnishee of any liability or coverage under the policy was unjustified. The defendant, notwithstanding the refusal of garnishee to defend, filed no answer in the cause and on October 17, 1955, evidence was presented by plaintiff as to the casualty and the extent of his injuries, and the court entered a judgment for $15,000.

The policy under consideration contained the following condition: "No action shall lie against the company * * * until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company." It is contended by garnishee that it is not liable for the payment of the amount provided in the policy because the foregoing judgment (by default) was not the result of an "actual trial." We find no merit in that contention. This for the reason that garnishee's conduct in wrongfully refusing to defend the suit or to assume any liability for a judgment that might be obtained therein (particularly in the unrestricted and comprehensive manner stated in the quoted letter) amounted to a waiver of the so-called "after trial" clause.

"Undoubtedly the insured may waive the condition requiring a trial of the issue, and the authorities are practically unanimous in holding that a denial of liability and refusal to take the defense is a waiver of this condition." Butler Bros. v. American Fidelity Co., 120 Minn. 157, 139 N.W. 355, 358. See also, Carthage Stone Co. v. Travelers' Ins. Co., 274 Mo. 537, 203 S.W. 822; Bituminous Casualty Corp. v. Walsh & Wells, Inc., Mo.App., 170 S.W.2d 117; Annotation, 49 A.L.R.2d 694, 751; St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U.S. 173, 26 S. Ct. 400, 50 L.Ed. 712; United States Guarantee Co. v. Liberty Mut. Ins. Co., 244 Wis. 317, 12 N.W.2d 59; Independent Milk & Cream Co. v. Aetna Life Ins. Co., 68 Mont. 152, 216 P. 1109.

What we have heretofore said will indicate our view that the garnishee is indebted to defendant in the sum of $10,000 by reason of the policy of insurance herein described, and that in this garnishment proceeding plaintiff was entitled to recover that sum from the garnishee to be applied toward the satisfaction of his judgment herein against the defendant. Accordingly, the judgment discharging the garnishee is reversed and the cause is remanded with directions to the trial court to enter such orders and judgment as may be appropriate in order to conform to the views herein expressed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.