R. H. CLARKSON, Plaintiff-Respondent,

v.

MFA MUTUAL INSURANCE COMPANY, a corporation, Defendant-Appellant.

No. 8579.

Springfield Court of Appeals.

Missouri.

March 3, 1967.

Marvin Motley, Branson, for defendant-appellant.

Neale, Newman, Bradshaw, Freeman & Neale, Warren S. Stafford, Jerry L. Redfern, Springfield, A. H. Blunk, Forsyth, for plaintiff-respondent.

STONE, Presiding Judge.

In this court-tried action at law, defendant MFA Mutual Insurance Company appeals from an adverse judgment in the sum of $1,000, that being the limit of defendant's liability under medical payments coverage afforded by its policy issued to plaintiff R. H. Clarkson of Protem, Taney County, Missouri. Plaintiff's recovery was for medical expenses admittedly incurred by him, as the stepfather of Gaila Sue Nave,

an unmarried minor then sixteen years seven months of age, in treatment of bodily injuries sustained by her on July 27, 1963, when an automobile in which she was riding as a passenger ran off Highway 76A in Taney County and overturned. Defendant's obligation under its policy was to "pay all reasonable expenses incurred within one year after date of accident for necessary medical * * * services * * * to or for the named insured [plaintiff] and each relative who sustains bodily injury caused by accident, while occupying or through being struck by an automobile * * *." The policy defined "relative" as meaning "the spouse of the named insured and any relative of the named insured or spouse who is *a resident of and actually living in the same household as the named insured,*" the italicized phrase being hereinafter referred to as *the policy definition.* (All emphasis herein is ours.) The sole issue is as to whether or not Gaila Sue was, at the time of the aforesaid accident, a "relative" within the contemplation and meaning of the policy definition.

Prior to May 27, 1963, Gaila Sue resided with her stepfather, mother and half-brother in the family home at Protem; and, during the 1962–63 school term, she completed the Junior year in high school at Forsyth, the county seat of Taney County. After the close of that school year, to wit, on May 27, she went to work as a waitress in Captain Bill's restaurant at Rockaway Beach, a summer resort community on Lake Taneycomo in Taney County which is about twenty-five miles from Protem. The restaurant was open seven days each week and long hours each day, from 7 A.M. until as late as 3 A.M.; and Gaila Sue's hours of employment were indefinite, irregular and sometimes long. As she explained, her employer "told us [Gaila Sue and seven other waitresses] the night before what time to come in the next day." "If I went on in the morning, I worked from seven to four, and sometimes I came back in at night and worked from six to nine and—or I could work from twelve to

nine or later or two to eleven." "Sixteen [hours] was the most I ever worked." "As a part of [their] employment," the waitresses "were furnished" rooms in a building behind the restaurant and also their meals. They were not required to stay overnight in the rooms so furnished; but, as Gaila Sue pointed out, "it was more convenient" and all of them did. Furthermore, Gaila Sue did not drive and had no automobile. In these circumstances, she was compelled to bring some clothing with her, "uniforms, shorts and blouses and swimming suits and a couple of dresses"; and she did her own laundry. Having neither time nor conveyance to make such trips, she did not go home during the two-month period of her employment prior to the accident on July 27, 1963. However, she corresponded with her mother and a girl friend, and her stepfather and mother visited her at Rockaway Beach some six or seven times.

*Defendant* asserts that "the terms of the policy * * * are clear and unambiguous" and that the undisputed evidence "conclusively shows" that, at the time of the accident on July 27, 1963, she was not "a resident of" the same household as her stepfather but "was actually living at Rockaway Beach, Missouri." On the other hand, *plaintiff* insists that the policy definition is ambiguous, i. e., "susceptible of interpretation in opposite ways" [Leggett v. Missouri State Life Ins. Co., Mo. (banc), 342 S.W.2d 833, 852(13); J. E. Blank, Inc. v. Lennox Land Co., 351 Mo. 932, 957, 174 S.W.2d 862, 868], and that Gaila Sue, an unemancipated 16-year-old high school student "on a temporary sojourn from her

home during the summer school vacation," remained a "relative" within the policy definition.

■ Is the policy definition ambiguous? In considering this question, we assume *arguendo* that the policy definition might be susceptible of the interpretation placed upon it by defendant, which is, in substance and effect, that Gaila Sue remained "a resident of and actually living in the same household" as her stepfather only so long as she was physically and corporeally present there and that she lost that status when she went to Rockaway Beach even though she intended to abide there for only a limited time and a specific purpose, to wit, to work as a waitress during the summer vacation period between school years. However, if the policy definition also is reasonably susceptible of a contrary interpretation, then the judgment nisi must be affirmed. For nothing in the field of insurance law is more conclusively settled than the principle that, where there is reasonable doubt or uncertainty as to the meaning of language used in an insurance policy, the interpretation most favorable to the insured will be adopted [1] and the provisions avoiding, limiting or cutting down coverage or liability will be construed most strongly against the insurer.[2]

Defendant says that the policy definition imposes conjunctive requirements that a relative must be not only (1) "a resident of" the same household as the named insured but also (2) "actually living in" that household. However, this apparent duality of requirement is one of language and

1. Cain v. Robinson Lumber Co., 365 Mo. 1238, 295 S.W.2d 388, 391(3); Soukop v. Employers' Liability Assur. Corp., 341 Mo. 614, 626, 108 S.W.2d 86, 91(5), 112 A.L.R. 149; Hammontree v. Central Mutual Ins. Co., Mo.App., 385 S.W.2d 661, 665(2); North Kansas City Memorial Hospital v. Wiley, Mo.App., 385 S.W.2d 218, 223(9); Weinberg v. Globe Indemnity Co., Mo.App., 355 S.W.2d 341, 347; Allstate Insurance Co. v. Hartford Accident & Indemnity Co., Mo.App., 311 S.W. 2d 41, 47(7).

2. Brugioni v. Maryland Casualty Co., Mo., 382 S.W.2d 707, 710–711(3); Giokaris v. Kincaid, Mo., 331 S.W.2d 633, 638–640(3), 86 A.L.R.2d 925; State Farm Mutual Auto. Ins. Co. v. Mid-Continent Cas. Co., Mo.App., 378 S.W.2d 232, 235; Utchen v. American Casualty Co. of Reading, Pa., Mo.App., 356 S.W.2d 102, 105(4); Varble v. Stanley, Mo.App., 306 S.W.2d 662, 665 (2). See American Universal Ins. Co. v. Thompson, 62 Wash.2d 595, 384 P.2d 367, 370–371.

grammar only, in that, as numerous authorities [3] point out and opposing counsel in the instant case agree, the terms "reside" and "live" are synonymous. The former may be "more formal" than the latter [Luvall v. Luvall, 228 Ky. 577, 15 S.W.2d 433], but the conjunctive use of both terms in the policy definition is simply repetitive and cumulative and adds nothing in meaning or effect. So, "a resident of and actually living in" is the equivalent, in meaning and significance, of "actually residing and living in" or, more simply put, of either "actually residing in" or "actually living in."

Literally hundreds of cases have dealt with the meaning of "reside" or "live." One bold, hardy explorer in this judicial jungle years ago listed more than one hundred reported decisions on each side of the question as to whether "residence" and "domicile" are synonymous, with Missouri cases cited in each list. Kennan on Residence and Domicile (1934), § 10, pp. 22–27. Our Supreme Court, en banc, has observed that "[t]he words 'residence,' 'place of abode' and 'domicile' have many meanings in different connections * * *" [In re Duren, 355 Mo. 1222, 1232, 200 S.W.2d 343, 349–350, 170 A.L.R. 391]; and, more recently this court, per our departed brother, Ruark, J., in eschewing any attempt to define "residence," graphically likened that word unto "a slippery eel." State v. Tustin, Mo.App., 322 S.W.2d 179, 180. Our present exploration convinces us that the "eel" has undergone no metamorphosis. In fine, we must regard the terms "reside," "resident" and "residence" as ambiguous, elastic and relative,[4] and the synonymous terms "live" and "living" as afflicted with

the same frailties. Clark v. Industrial Accident Com'n. of Cal., 129 Cal.App. 536, 19 P.2d 44, 46.

Although the instant appeal presents no need for us to essay definition of any of the foregoing terms, a task from which others less timorous than we have stood aloof, certain relevant judicial and statutory pronouncements should be noted here. At common law, the terms "domicile" and "residence" or "resident" were used interchangeably and were treated as being synonymous [State ex rel. Kelly v. Shepperd, 218 Mo. 656, 666, 117 S.W. 1169, 1171–1172 (2); State ex rel. Stoffey v. La Driere, Mo.App., 273 S.W.2d 776, 781(13)], and "residence" and "resident" are frequently, although not always, used in that sense now. Phelps v. Phelps, 241 Mo.App. 1202, 1209, 246 S.W.2d 838, 844; State upon Inf. of Reardon v. Mueller, Mo.App., 388 S.W.2d 53, 58(8). But in whatever context the latter terms are used, they almost invariably imply and connote *"something of permanence or continuity at least for an indefinite period,* to the exclusion of another contemporaneous residence" [In re Duren, supra, 355 Mo. at 1232, 200 S.W.2d at 350], that is, *"intended permanency * * * not in the sense that the residence must never be changed, but in the sense that there is no intention to change it."* McDowell v. Friedman Bros. Shoe Co., 135 Mo.App. 276, 283, 115 S.W. 1028, 1031. In this connection, we note also that our General Assembly has declared that "[a]s used in the statutory laws of this state * * * '[p]lace of residence' means the place where the family of any person *permanently* resides in this state, and the place where any person having no

3. Daugherty v. Nelson, 241 Mo.App. 121, 130, 234 S.W.2d 353, 358(7); Curtis v. Curtis, 330 Mich. 63, 46 N.W.2d 460, 462(5); People v. Carman, 385 Ill. 23, 52 N.E.2d 197, 199; Nelson v. Nelson, 71 S.D. 342, 24 N.W.2d 327, 331(9); Bohn v. Better Biscuits, Inc., 26 Cal.App.2d 61, 78 P.2d 1177, 1179, 80 P.2d 484; Leroux v. Industrial Accident Com'n. of Cal., 140 Cal.App. 569, 35 P.2d 624, 626; Western-Knapp Engineering Co. v. Gil-

bank, 9 Cir., 129 F.2d 135, 136; Powers v. United States, 6 Cir., 119 F. 562, 565.

4. 77 C.J.S. Reside, p. 285; Id., Residence, pp. 289–290; Id., Resident, pp. 305–306; Kennan on Residence and Domicile (1934), § 1, l. c. 3–4; Id., § 11, pp. 27–28. See State Farm Mutual Auto. Ins. Co. v. Hanna, 277 Ala. 32, 166 So.2d 872, 876; Chapman v. Davis, 233 Minn. 62, 45 N.W. 2d 822, 825(6).

family generally lodges" [V.A.M.S. § 1.020 (9)], and that the St. Louis Court of Appeals has pointed out that this statutory definition "merely codifies the presumption of law that would in any event exist without it." State upon Inf. of Reardon, supra, 388 S.W.2d at 58. Although not entirely so [State upon Inf. of Reardon, supra, 388 S.W.2d at 60(10)], "[r]esidence is largely a matter of intention" [In re Lankford's Estate, 272 Mo. 1, 9, 197 S.W. 147, 148(2); In re Ozias' Estate, Mo.App., 29 S.W.2d 240, 243], hence an established residence is not lost by temporary absence therefrom, either on business or on pleasure, with no intention to abandon that residence or acquire another.[5]

We have not overlooked the requirement of the policy definition that the "relative" be *actually* living or residing in the insured's household. "Actually" means "in fact; really." Webster's New International Dictionary (2nd Ed.), p. 28. See 1 C.J.S. Actually, p. 1445. Its "natural function * * * is to emphasize the dominant thought of the word or phrase with which it is coupled. [Citing cases] It imports reality as distinguished from form, method, hypothesis, conjecture, or surmise. It is the antonym of constructive, speculative, nominal, fictitious or feigned. '*Actually resided,*' therefore, means a real residence, a residence existing in truth." City of Marlborough v. City of Lynn, 275 Mass. 394, 176 N.E. 214, 215. "'*Actual residence*' * * * means no more than residence—true, substantial and real; not fictitious, nominal, or pretended." United States v. Anderson, D.C.Mont., 238 F. 648, 649. In various settings, "actual residence" is treated as the equivalent of "domicile" [Connolly v. Connolly, 33 S.D. 346, 146 N.W. 581(1); Bechtel v. Bechtel, 101 Minn. 511, 112 N.W. 883(1), 12 L.R.A.(N.S.) 1100] or "'domicile or permanent residence'" [State ex

rel. Schoonover v. Crabill, 136 Neb. 819, 287 N.W. 669, 672(6)] or "actual permanent residence." Littell v. Millemon, 154 Kan. 669, 121 P.2d 233, 237(2). But, as with the simple term "residence," in whatever context the compound term "actual residence" is employed it almost invariably implies and connotes "permanency in the sense of the establishment of a usual place of abode * * *." Hughes v. Lucker, 233 Minn. 207, 46 N.W.2d 497, 499(4). See again City of Marlborough, supra, 176 N.E. at 215. And, as it is generally understood that "residence" involves and demands more than mere physical presence [Routt v. Barrett, 396 Ill. 322, 71 N.E.2d 660, 671 (21, 22)], so it is that "'[a]ctual residence' is *not synonymous with physical presence*" [Toy Teung Kwong v. Acheson, D.C.Cal., 97 F.Supp. 745, 747—see Deming v. United States ex rel. Ward, 59 App.D.C. 188, 37 F.2d 818, 820] and is not to be equated with a mere temporary abode. Chapman v. Davis, 233 Minn. 62, 45 N.W.2d 822, 826 (11); Hughes, supra, 46 N.W.2d at 499(4). And, even as a "residence" is not lost by temporary absence therefrom with no intention to abandon it or acquire another [see cases cited marginally in note 5], neither is an "actual residence" so terminated. Chapman, supra, 45 N.W.2d at 826(11); Hughes, supra, 46 N.W.2d at 500(6); United States v. Anderson, supra, 238 F. at 649(2).

Instant defendant argues that, since the evidence showed that Gaila Sue "was physically present in Rockaway Beach" and "stayed, lodged, ate her meals, sojourned and abided" there during the two-month period from May 27 to July 27, 1963, she was not during that period "a resident of and actually living" in her stepfather's household at Protem. However, as the hereinbefore-cited cases demonstrate, that was not necessarily so. There is no doubt but that, prior to May 27, 1963, her

---

5. State ex rel. Kelly v. Shepperd, 218 Mo. 656, 667, 117 S.W. 1169, 1172(3); McDowell v. Friedman Bros. Shoe Co., 135 Mo.App. 276, 284, 115 S.W. 1028, 1031 (4); Phelps v. Phelps, 241 Mo.App. 1202, 1209, 246 S.W.2d 838, 845; Trumbull v. Trumbull, Mo.App., 393 S.W.2d 82, 91. See Mackie v. Rankin, D.C.Mich., 87 F. Supp. 614, 617(2); Stadtmuller v. Miller, 2 Cir., 11 F.2d 732, 738, 45 A.L.R. 895.

actual residence was in her stepfather's household; and it is fairly inferable from the record as a whole that, after a sixteen-day period of hospitalization for injuries suffered in the accident of July 27, she returned to the family home at Protem and lived there during the 1963–64 school term while she completed her Senior year in Forsyth high school. In short, the record reflects no act or utterance on the part of Gaila Sue,[6] which would have compelled or required the trial judge to find that, in taking employment as a waitress at a summer resort during the vacation period, this 16-year-old high school student had any intention of abandoning her actual residence in the family home at Protem or of changing such actual residence to the building behind the restaurant where she and seven other waitresses "were furnished" rooms, even if she, being non sui juris as an unemancipated minor, could have effected such abandonment or change.[7] The question as to Gaila Sue's actual residence at the time of the accident on July 27 was one of fact,[8] in the determination of which the trial judge was entitled to, and no doubt did, consider not only the duration of Gaila Sue's absence from plaintiff's household[9] but also its nature and purpose [Keller v. Carr, 40 Minn. 428, 42 N.W. 292, 294]; and, on the evidence presented, certainly the trial judge reasonably could have found that the building behind the restaurant was nothing more than a temporary place of abode and that Gaila Sue continued to be "a resident of and actually living in the same household" as her stepfather. See particularly American Service Mutual Ins. Co. v. Pugh, 8 Cir., 271 F.2d 174. That being so, we obviously may not set aside the judgment nisi as "clearly erroneous." V.A. M.R. Rule 73.01(d); V.A.M.S. § 510.310 (4).

The judgment for plaintiff is affirmed.

HOGAN and TITUS, JJ., concur.

---

6. The intent of the person whose place of residence is in question is to be gathered largely from his (or her) acts and utterances before, at, and after the date when such place of residence is in dispute. In re Toler's Estate, Mo., 325 S.W.2d 755, 760(8); Trumbull, supra note 5, 393 S.W. 2d at 91(19); Memphis Bank & Trust Co. v. West, Mo.App., 260 S.W.2d 866, 876 (7).

7. Since both parties tried the instant case in the circuit court, and briefed and submitted it here, without reference to the question as to whether or not Gaila Sue, an unemancipated minor, could have fixed or acquired a *residence of choice*, we have ruled this appeal without considering that question. The interested may consult 28 C.J.S. Domicile § 12b, pp. 21–22; Beckmann v. Beckmann, 358 Mo. 1029, 218 S.W.2d 566, 9 A.L.R.2d 428; Phelps, supra note 5, 241 Mo.App. at 1208, 246 S.W.2d at 844(9).

8. Kelso v. Kelso, Mo., 306 S.W.2d 534, 536, 71 A.L.R.2d 258; Barrett v. Parks, 352 Mo. 974, 977, 180 S.W.2d 665, 666; State on Inf. of McKittrick v. Wiley, 349 Mo. 239, 160 S.W.2d 677, 686(20); Toy Teung Kwong v. Acheson, D.C.Cal., 97 F.Supp. 745, 747.

9. The parties have treated the word "household" as meaning " 'those who dwell under the same roof and compose a family,' " the definition used in Kelso, supra, 306 S.W.2d at 536, cited in defendant's brief. We accept that definition as satisfactory and sufficient on this appeal, cognizant however that "[t]he word 'family,' synonymous with 'household,' is [another term] of varied signification and may have a narrow or broad meaning." Giokaris v. Kincaid, Mo., 331 S.W.2d 633, 641, 86 A.L.R.2d 925.